553 A.2d 228

John Anthony TOLBERT

v.

STATE of Maryland.

No. 65, Sept. Term, 1988.

Court of Appeals of Maryland.

Feb. 13, 1989.

Motion for Reconsideration Denied March 28, 1989.

14

Michael R. Malloy, Asst. Public Defender (Alan H. Murrell, Public Defender, both on brief), Baltimore, for petitioner.

Richard B. Rosenblatt, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., both on brief), Baltimore, for respondent.

Argued before ELDRIDGE, COLE, RODOWSKY, McAULIFFE, ADKINS, BLACKWELL, JJ. and CHARLES E. ORTH, Jr., Associate Judge of the

Court of Appeals of Maryland, (retired) Specially Assigned.

ORTH, Judge.

Once again we are called upon to apply the rulings concerning peremptory challenges of *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), to determine the constitutionality of the composition of a jury in a criminal cause. We hold that the jury in the Circuit Court for Baltimore County which convicted John Anthony Tolbert of robbery and related crimes was constitutionally offensive and that he is entitled to a new trial.[1]

I

(A)

We visited *Batson* in *Stanley v. State*, 313 Md. 50, 542 A.2d 1267 (1988). The comprehensive opinion of this Court, written by Adkins, J., carefully dissected the majority opinion of the Supreme Court.[2] We found that

the Supreme Court concluded that by using evidence concerning the prosecutor's exercise of peremptory chal-

---

1. The jury found Tolbert guilty of robbery, battery, and theft of property having a value of over $300. At the penalty stage of the trial, upon due notice by the State, the court found that Tolbert was a subsequent offender in the contemplation of Maryland Code (1957, 1987 Repl.Vol.) Art. 27, § 643B. On the robbery conviction a mandatory sentence of 25 years without eligibility for parole provided by that statute was imposed. Sentence on the battery conviction was suspended generally, and the theft conviction was merged into the robbery conviction.

   The Court of Special Appeals affirmed on appeal. *Tolbert v. State*, No. 1313, September Term, 1987, per curiam, unreported. We granted certiorari.

2. Powell, J., delivered the opinion of the Court, in which Brennan, White, Marshall, Blackmun, Stevens, and O'Connor, JJ., joined. White, J., and Marshall, J., filed concurring opinions. Stevens, J., filed a concurring opinion, in which Brennan, J., joined. O'Connor, J., filed a concurring opinion. Burger, C.J., filed a dissenting opinion, in which Rehnquist, J., joined. Rehnquist, J., filed a dissenting opinion, in which Burger, C.J., joined.

lenges, a defendant could establish "a prima facie case of purposeful discrimination in selection of the petit jury." *Stanley* at 59, quoting *Batson*, 476 U.S. at 96, 106 S.Ct. at 1722, 90 L.Ed.2d at 87. In *Stanley, id.,* we quoted what the Supreme Court said:

> "To establish such a case, the defendant first must show that he is a member of a cognizable racial group . . . and that the prosecutor has exercised peremptory challenges to remove from the venire members of the defendant's race. Second, the defendant is entitled to rely on the fact, as to which there can be no dispute, that peremptory challenges constitute a jury selection practice that permits 'those to discriminate who are of a mind to discriminate.' . . . . Finally, the defendant must show that these facts and any other relevant circumstances raise an inference that the prosecutor used that practice to exclude the veniremen from the petit jury on account of their race. This combination of factors in the empaneling of the petit jury, as in the selection of the venire, raises the necessary inference of purposeful discrimination. *Id.* at 96, 106 S.Ct. at 1723, 90 L.Ed.2d at 87–88 [citations omitted]."

(Footnote omitted). A "prima facie case" in the *Batson* context denotes "the establishment of a legally mandatory, rebuttable presumption." *Stanley,* 313 Md. at 60, 542 A.2d 1267, quoting *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 254 n. 7, 101 S.Ct. 1089, 1094 n. 7, 67 L.Ed.2d 207, 216 n. 7 (1981). We observed in *Stanley:*

> The Supreme Court was confident that trial judges, experienced in supervising voir dire, would "be able to decide if the circumstances concerning the prosecutor's use of peremptory challenges creates a prima facie case of discrimination against black jurors."

313 Md. at 60, 542 A.2d 1267, quoting *Batson,* 476 U.S. at 97, 106 S.Ct. at 1723, 90 L.Ed.2d at 88. The Court cautioned, however, that in deciding whether the defendant had made the requisite showing of a prima facie case of racial discrimination the trial judge should consider "all relevant

circumstances." 476 U.S. at 96–97, 106 S.Ct. at 1723, 90 L.Ed.2d at 88.

### (B)

The necessary inference of racial discrimination was apparent from the pattern the prosecutor followed in the use of his peremptory challenges.[3]  In the midst of the jury selection there was a bench conference on the record with Tolbert present.  Defense counsel objected

> to the way that the State is striking only black potential jurors.  The only exercise of strikes that they have used has been black individuals.

He declared:

> The record should reflect that the defendant is black.  I believe the court should inquire or ask the State to articulate a reason for this.

The court said: "Yes, please, your four strikes are all black prospectives."  They were the only peremptory challenges by the State exercised to that time.

---

3.  Tolbert's trial began on 5 August 1987.  The trial court declared that inasmuch as the State was seeking the imposition of a mandatory 25 year sentence under the subsequent offender statute (Md.Code, Art. 27, § 643B), Tolbert was entitled to 20 peremptory strikes and the State to 10.  The court was wrong.  It was applying a former law.  *See* Md.Code (1973, 1984 Repl.Vol.) § 8–301 of the Courts and Judicial Proceedings Article (CJ).  That law was amended by Acts 1986, ch. 656, effective 1 July 1986.  Under the amended law, when a defendant is subject to a sentence of death or life imprisonment he is entitled to 20 peremptory challenges and the State to 10.  CJ § 8–301(a) and (b).  But when a defendant is subject to a sentence of 20 years or more, except for common law offenses for which no specific penalty is provided by statute, he is permitted only 10 peremptory challenges and the State is limited to 5.  CJ § 8–301(c) (Md.Code 1973, 1984 Repl.Vol., 1988 Cum.Supp.).  In all other cases, including the common law offenses, each party is permitted only 4 peremptory challenges.  CJ 8–301(d).  The Court of Appeals contemporaneously changed Md. Rule 4–313 to be in concert with the 1986 amendment to the statute.  For peremptory challenges to alternate jurors *see* Md. Rule 4–313(a)(4).

In the trial here, Tolbert exercised 17 peremptory challenges—7 more than lawfully permitted.  The State, however, exercised only 5.

Although the trial court did not expressly so state, the clear implication raised by the court in calling for the prosecutor to explain why he was striking only black individuals was that the court believed that Tolbert had met his burden to make a prima facie showing of racial discrimination. What reasons a prosecutor may advance for his challenges are not relevant to a prima facie showing *vel non*. It is the "circumstances" concerning the prosecutor's use of peremptory challenges which may create a prima facie case of discrimination against black jurors, not the reasons given for the challenges. We share the confidence of the Supreme Court that trial judges are able to decide whether the circumstances create such a prima facie case. Here, the defendant was a black man and the victim was a white woman. The prosecutor used his first four peremptory challenges to strike black individuals. Tolbert was entitled to rely on the fact that peremptory challenges constitute a jury selection practice that permits those to discriminate who are of a mind to discriminate. These circumstances were enough to constitute the required prima facie showing. We cannot say that the trial judge was wrong in so determining.

## II

### (A)

Once a prima facie showing is made, "the burden shifts to the State to come forward with a neutral explanation for challenging black jurors." *Stanley,* 313 Md. at 61, 542 A.2d 1267, quoting *Batson,* 476 U.S. at 97, 106 S.Ct. at 1723, 90 L.Ed.2d at 88. The Supreme Court emphasized that "the prosecutor's explanation need not rise to the level justifying exercise of a challenge for cause." *Id.* We discussed in detail the burden on the State imposed by *Batson* in *Stanley* 313 Md. at 61–63, 542 A.2d 1267. We neatly summarized the obligations of the State, the rights of the defendant, and the duties of the trial judge in *Stanley* at 92–93, 542 A.2d 1267:

[T]he State is to present, if it can, honest, neutral, nonracial reasons for the challenges of each black potential juror who was stricken. Any reasons presented must be legitimate, clear and reasonably specific, as general assertions of assumed group bias or broad denials of discriminatory motives will be insufficient to overcome the defendants' prima facie cases. The reasons must be tailored to the particular facts of the case that was tried and related to the individual traits of the jurors. The defendant will be afforded the opportunity to rebut any explanations put forth by the prosecutor and to expose any justification that on its face may appear racially neutral, but is in reality a sham or pretext. The trial court must then articulate a clear ruling detailing the basis on which it was made, and explaining whether the established prima facie case of purposeful discrimination has been overcome by the State.

A new trial will be required if the State cannot produce satisfactory nondiscriminatory reasons for every peremptory challenge exercised to exclude a black juror. A new trial will be ordered if any reasons given by the State are perceived by the trial court as only pretext and thus not satisfactorily racially neutral. A new trial will be mandated if any one of the peremptory challenges to black jurors was exercised with a discriminatory purpose, as the State will not be allowed "one free discriminatory strike." *Any* violation requires a new trial.

### (B)

When the trial court called upon the prosecutor to explain why his first four (and only) peremptory challenges to that point in the jury selection were utilized to strike black individuals, the prosecutor said: "First, I wasn't aware of that." He went on:

I believe the individuals I struck are young females, and the last individual I struck was on a prior jury that I had which was not guilty. That was the concern that I had.

The prosecutor pointed out that "[t]here are three black individuals, one of whom is a female sitting in the foreman's spot, who I just said was acceptable to the State. She is a black female and there are two black gentlemen on the jury." The court directed attention to a certain juror, "a 40 year-old black female with two years of college, who did not respond to the voir dire question." [4] It turned out that she was the one on the prior jury, which rendered a verdict of "not guilty" in ten minutes. Defense counsel interjected that this was hardly a good enough reason. He said that he knew something about that case and the verdict was fair. "Because the jury came back with a fair verdict is no reason to challenge the juror." The court asked: "Would your strikes be of any white juror that was on that panel as well?" The prosecutor answered: "Certainly." He continued:

> There are a number of jurors who were on that jury that we are in the middle of, and I intend to strike several of those who I felt listened closely to the evidence, and the ones who I felt didn't listen closely to the evidence, I'm striking, whatever color.

The prosecutor observed that he was required to articulate a reason and that he thought that he had articulated a good reason. The court inquired: "Why young black females?" and asked what was the race of the victim. It was elicited after the prosecutor's avowal that "[t]he race has nothing to do" with it, that the victim was "a 40 year-old white female." A discussion ensued whether the prosecutor had given as a reason for his strikes that the individuals were young black females. He insisted that he said young females, not young *black* females. He stated:

> I'm striking young women off the jury. I intend to go back into the pool. There are nine young females sitting in the jury box.

---

4. A transcript of the voir dire proceedings is not included in the record before us. In any event, the voir dire questions submitted by the State to the trial court are the usual boiler plate ones and give no indication of racial discrimination.

The court was not satisfied. It asked: "Why did you articulate young females, white or black?" The answer was:

Because my intuition and experience tells me that young females have a difficult time coming to decisions in cases like this.

Defense counsel found that "rather surprising." He called attention to the jury box: "We have got three young white females that haven't been struck." The prosecutor said that

it's always my strategy to seat twelve individuals and strike as seldom from the well as possible and then go back into the pool, into the jury box and strike individuals.

He offered to show the court his notes of the people he wanted to strike, which included the three young white females. Defense counsel moved for a mistrial. He thought that the reasons articulated by the State were "totally insufficient."

We have here a black defendant. Obviously we have a white victim.

It is my feeling that by the State striking these black females, he's denying the defendant a chance to have his case fairly tried, and I think that's the kind of thing that the Supreme Court is looking at, what it said that the court should require, that the State articulate a reason. I think this is unfair.

The trial court denied the motion with the sole comment: "I think the State has articulated a reason, which is not racially based."

The jury selection continued. The jury was empaneled, sworn, and left the courtroom. Defense counsel pointed out that of the three young female jurors the prosecutor said he wanted to strike, two remained on the panel. Defense counsel renewed his motion for a mistrial, and the motion was summarily denied. The prosecutor commented:

When I articulated to the court that I did not like young females, I went back and compared the ages of all the young females, and I struck the youngest female on the panel ... who was only 23....

The court put on the record the composition of the jury as empaneled—six females, two of whom were black, including the forelady; two black males; four white males. The female jurors were 25, 28, 38, 42, 55 and 68 years of age respectively. The alternate juror was a black female, 24 years old. The court also ensured that the record reflected that "four of the five strikes by the State were on black prospective jurors" and that none of "the 17 strikes taken by the defense were on black jurors." The prosecutor noted that he had not used all of his peremptory challenges.[5]

### III

We first observe that, given a prima facie showing of racial discrimination in the exercise of peremptory challenges, the makeup of the jury as empaneled is immaterial with respect to the explanation for challenging black jurors. Even if a jury empaneled to try a black defendant consists of 12 black jurors, "[a] new trial will be required if the State cannot produce satisfactory nondiscriminatory reasons for *every* peremptory challenge exercised to exclude a black juror...." *Stanley*, 313 Md. at 92, 542 A.2d 1267 (emphasis added). We emphasized in *Stanley* that "*[a]ny* violation requires a new trial." *Id.* We made perfectly clear that

[a] new trial will be mandated if *any one* of the peremptory challenges to black jurors was exercised with a discriminatory purpose....

*Id.* at 93, 542 A.2d 1267 (emphasis added). We stressed: "[T]he State will not be allowed 'one free discriminatory

---

5. The State had used five peremptory challenges and these were all it was permitted by law. *See* note 3, *supra*. Apparently the State believed, under the mistaken allocation by the trial court, that it had five peremptory challenges remaining.

strike.' " *Id.* Furthermore, the manner in which the *defendant* exercised his peremptory challenges plays no part in the determination whether the jury was constitutionally composed.[6] The use by the defense of its peremptory challenges to strike only white jurors is of no significance. Likewise, the fact that the State does not use all of its peremptory challenges is not dispositive.

■ Of the utmost significance in the determination of the issue before us is the fact that the State used its first four peremptory challenges to strike black females from the jury. Tolbert indicated in his brief that the prosecutor's explanation for one of these strikes—that the prospective juror had been a member of a jury that had returned a quick "not guilty" verdict on the preceding day—may satisfy the *Batson* test. And, on an acceptance, arguendo, that the prosecutor set forth "a permissible racially neutral selection criterion" when he explained that he was striking young women,[7] Tolbert concedes that the use of another of the first four peremptory challenges to remove a 21 year old black woman was justified. This leaves for consideration the striking of a black female 38 years of age and a black female 54 years of age. The explanation advanced by the prosecutor simply does not present neutral, nonracial reasons for striking either of these two individuals. In relation to the individual traits of those two prospective jurors, the reasons lack the legitimacy, clarity, and reason-

---

6. *See Alabama v. Cox,* 57 U.S.L.W. 3453 (15 January 1989) (No. 88–630). The defendant was white. The State failed in its attempt to get an order barring the defense from removing all the blacks from the jury. On 9 January 1989, —— U.S. ——, 109 S.Ct. 817, 102 L.Ed.2d 806, the Supreme Court denied a petition for a writ of certiorari. *See also* the discussion in the New York Times of 31 December 1988 at 6, col. 1.

7. We have no need to reach and expressly do not decide whether the rulings of *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), extend to gender or other discrimination in the use of peremptory challenges. Nor do we decide whether the provisions of Maryland Code (1973, 1984 Repl.Vol.) § 8–103 of the Courts and Judicial Proceedings Article and Article 46 of the Maryland Declaration of Rights apply to peremptory challenges.

able specificity called for by *Batson.* The reasons simply do not hold water in the circumstances.

"When a claim is based upon a violation of a constitutional right it is our obligation to make an independent constitutional appraisal from the entire record." *Harris v. State,* 303 Md. 685, 697, 496 A.2d 1074 (1985). Here, on our independent constitutional appraisal of the undisputed facts and the rest of the record, we conclude that Tolbert was denied equal protection of the laws guaranteed him under the Fourteenth Amendment to the Constitution of the United States by the State's use of peremptory challenges to exclude members of his race from the petit jury.[8]

Tolbert shall be afforded a new trial. The State did not produce satisfactory nondiscriminatory reasons for every peremptory challenge exercised to exclude a black juror. The reasons given by the State were not satisfactorily neutral. At least one of its peremptory challenges to black jurors appears to have been exercised with a discriminatory purpose. Any one of these reasons is sufficient to entitle Tolbert to a new trial. *Stanley,* 313 Md. at 92–93, 542 A.2d 1267.

JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED;

CASE REMANDED TO THAT COURT WITH DIRECTION TO REVERSE THE JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE COUNTY AND TO REMAND THE CASE TO THAT COURT FOR A NEW TRIAL;

COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID BY BALTIMORE COUNTY.

---

**8.** We observe that the trial court in denying the motions for a mistrial did not "articulate a clear ruling detailing the basis on which it was made, and explaining whether the established prima facie case of purposeful discrimination had been overcome by the State." *Stanley v. State,* 313 Md. 50, 92, 542 A.2d 1267 (1988). In *Stanley* we concluded that such articulation was required by the dictates of *Batson.*