558 A.2d 816

**Charles Jerome SIMPKINS**

v.

**STATE of Maryland.**

**No. 1466, Sept. Term, 1988.**

Court of Special Appeals of Maryland.

June 9, 1989.

Michael R. Malloy, Asst. Public Defender (Alan H. Murrell, Public Defender, on the brief), Baltimore, for appellant.

Jillyn K. Schulze, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., Baltimore, and Sandra A. O'Connor, State's Atty. for Baltimore County, Towson, on the brief), for appellee.

Argued before GARRITY, ROBERT M. BELL and ALPERT, JJ.

ALPERT, Judge.

On September 30, 1988, Charles Jerome Simpkins, appellant, was found guilty by a jury in the Circuit Court for Baltimore County (Fader, J., presiding) of armed robbery and use of a handgun in a crime of violence. Subsequently, the trial court sentenced him to a mandatory life sentence without parole pursuant to Article 27, Section 643B. Appellant files this appeal, and presents three questions for our review:

1. Did the lower Court err by overruling Appellant's objection to the prosecutor's improper use of a peremptory challenge to strike the only black prospective juror from the jury?

2. Did the lower Court err by sentencing Appellant to a § 643B(b) life sentence?

3. Was the evidence insufficient?

## 1. The Peremptory Challenge

Prior to trial, the trial court conducted voir dire during which the prosecution exercised a peremptory strike against the only black potential juror in the sixty person jury pool. At the conclusion of voir dire, the defense attorney brought this fact to the court's attention. The court directed the prosecutor to state his reasons for striking the juror, to which the prosecutor responded, "Okay. The lady works for the Social Security Administration as a claims examiner. I do not like people who work for Social Security. I think they are sympathetic to defendants and I traditionally strike them." The trial court accepted the prosecution's explanation, and the case proceeded to trial.

■ On appeal, appellant, a black male, contends that under *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), his equal protection rights have been violated by the prosecution's purposeful exclusion from the jury panel of members of his own race. Specifically, he contends that the prosecutor did not rebut the *prima facie* case of prejudice established when the sole black prospective juror was peremptorily excluded from the panel.[1] We disagree.

---

1. The trial court's demand for an explanation from the prosecutor for excluding the prospective juror constitutes an implicit finding of a prima facie case of discrimination. *Stanley v. State,* 313 Md. 50, 83, 542 A.2d 1267 (1988); *Tolbert v. State,* 315 Md. 13, 18, 553 A.2d 228 (1989). The state does not contest this implied finding by the trial court. Thus, we are relieved from explicating the standard a defendant must meet in presenting such a prima facie case of discrimination. Such an interpretation of these principles in *Batson, supra,* has already been exhaustively and insightfully delivered in *Stanley, supra,* 313 Md. at 71–75, 542 A.2d 1267; *State v. Gorman,* 315 Md. 402, 410–11, 554 A.2d 1203 (1989); *Tolbert supra,* 315 Md. at 16–18, 553 A.2d 228. In *Stanley, supra,* the Court of Appeals resolved affirmatively the question of whether *Batson* principles may be applied if only one potential juror has been stricken where "the State uses peremptories in a manner that assures that *no* blacks will serve on a jury that is to try a black defendant." *See id.* [313 Md.] at 87, 542 A.2d 1267.

In *Batson, supra,* the Supreme Court articulated that the State's burden, once a prima facie case of discrimination is established, is to come forward with "a neutral explanation related to the particular case to be tried" for challenging black jurors. 476 U.S. at 98, 106 S.Ct. at 1723–24. This explanation need not, however, rise to the level of that required in justifying a "for cause" challenge, *id.* at 97, 106 S.Ct. at 1723; however, mere denials of discriminatory purpose or general assertions of good faith do not suffice to rebut the presumption. *Id.* at 98, 106 S.Ct. at 1723–24. In his concurring opinion, Justice White acknowledged that "[m]uch litigation will be required to spell out the contours of the Court's equal protection holding today ..." *Id.* at 102, 106 S.Ct. at 1725–26 (White, J., concurring).

We necessarily turn to the Court of Appeals for further explanation. In *Stanley, supra,* the Court articulated the burden the State must carry to rebut a *prima facie* case of *discrimination:*

At each hearing, the State is to present, if it can, honest, neutral, nonracial reasons for the challenges of each black potential juror who was stricken. Any reasons presented must be legitimate, clear and reasonably specific, as general assertions of assumed group bias or broad denials of discriminatory motives will be insufficient to overcome the defendants' prima facie cases. The reasons must be tailored to the particular facts of the case that was tried and related to the individual traits of the jurors. The defendant will be afforded the opportunity to rebut any explanations put forth by the prosecutor and to expose any justification that on its face may appear racially neutral, but is in reality a sham or pretext. The trial court must then articulate a clear ruling detailing the basis on which it was made, and explaining whether the established prima facie case of purposeful discrimination has been overcome by the State.

A new trial will be required if the State cannot produce satisfactory non-discriminatory reasons for every peremptory challenge exercised to exclude a black juror. A new

trial will be ordered if any reasons given by the State are perceived by the trial court as only pretext and thus not satisfactorily racially neutral.

*Id.* [313 Md.] at 92–93, 542 A.2d 1267. Read narrowly, *Stanley's* proscription against strikes premised upon "general assertions of assumed group bias" and not "related to the individual trait of the jurors" would apparently invalidate the reasoning afforded the prosecutor in the case below. In light of later case law, further interpreting *Batson* both within this jurisdiction and in other states, and the dangers inherent in attempting to strictly regulate the use of a well-established and purposely broad doctrine of jury selection, i.e., the peremptory challenge, we perceive no *Batson* violation under the present circumstances.

*Tolbert, supra,* is the only Court of Appeals case that has actually reached beyond the establishment of a *prima facie* case of discrimination to examine the sufficiency of the prosecutor's explanation in rebuttal. In that case, the prosecutor exercised four of his peremptory challenges to strike four black potential jurors from the panel. The lower court found that a prima facie case of discrimination had been established, however, it was satisfied with the prosecutor's explanation that he was striking young women from the panel.

In reversing the trial court and remanding the case for a new trial, the Court of Appeals never reached the question of whether striking young women from the jury panel constituted "a permissible racially neutral selection criterion." *Id.* at 23, 553 A.2d 228. The court held, however, that with regard to the peremptory strike of two black, female potential jurors, 38 years of age and 54 years of age, the prosecutor's reason did not "hold water in the circumstances." *Id.* at 24, 553 A.2d 228. Although in *Tolbert* the court intimated that the prosecutor's gender-related reasons for striking potential jurors may, in and of themselves, violate constitutional or statutory law, a person's status as a claims examiner for the Social Security Administration does not invoke the same level of protection.

In other jurisdictions, reasons offered in rebuttal of a prima facie case of discrimination that have been found to be sufficiently neutral include the prospective juror's employment status. *See, e.g., State v. Walton*, 227 Neb. 559, 418 N.W.2d 589 (1988) (prospective juror was unemployed), *United States v. McCoy*, 848 F.2d 743 (6th Cir.1988) (same); *Commonwealth v. Lloyd*, 376 Pa.Super. 188, 545 A.2d 890 (1988) (same); *State v. Minor*, 755 S.W.2d 318 (Mo.App. 1988) (prospective juror was a postal employee); *State v. Rogers*, 753 S.W.2d 607 (Mo.App.1988) (prospective juror was an employee at a state mental hospital). In *Walton, supra,* the reason proffered by the prosecutor to strike one of the prospective jurors was that she was married to a county social services worker. The Supreme Court of Nebraska stated:

> The court held that the prosecutor's explanation was adequate to explain his challenge of the third black prospective juror. The prosecutor explained that the potential juror was married to a "Douglas County Social Services individual." The trial judge accepted this explanation, noting that he felt there is a tendency on the part of people engaged in social services to blame others than the individual involved after a wrongful act is done. A peremptory strike based on a trial attorney's explanation that he would prefer not to have jurors who work in the social services area, or their spouses, is not a racially discriminatory use of a peremptory challenge. The effect of the prosecutor's "neutral explanation" was that his peremptory challenge was based not on the prospective juror's race, but on the nature of the employment of the juror's wife. A white juror could be challenged on the same reasoning.

*Id.* at 593. *See also State v. Rowe*, 228 Neb. 663, 423 N.W.2d 782, 787 (1988) (upholding the removal of a prospective juror on the basis that she was a "Job Service employee ... engaged in a form of social work" and also that she was friendlier during defense counsel's questioning of prospective jurors than she was during the State's questioning).

**694**

In contrast, in *Roman v. Abrams,* 822 F.2d 214 (2nd Cir.1987), a case relied upon by appellant, the prosecutor attempted to justify his peremptory strikes on several bases including the assertion that "knowledge of electronics, bookkeeping and computers might prevent a person from accepting the reasonable doubt standard of proof." The Second Circuit found such explanations "were on their face unworthy of belief." *Id.* at 228. Further, in that case, a trial judge had expressly found the prosecutor's explanation to be "circumlocutory, trivial, childish, incredible, and designed to cover up the ADA's discriminatory intent." *Id.*

In the case *sub judice,* the court below found as a matter of fact that the prosecution's proffered reasoning was "an honest answer." Further, at the conclusion of the trial, the trial court supplemented his ruling with a factual determination that two other potential jurors, who were white and also worked for Social Security Administration, were peremptorily struck by the prosecutor. As we stated in *Chew v. State,* 71 Md.App. 681, 701, 527 A.2d 332, *cert. granted,* 311 Md. 301, 534 A.2d 369 (1987), "[o]nce the trial judge has made those determinations whichever way they go, any subsequent reviewing court must pay greater deference to those determinations." To be sure this deference applies only to first level fact finding, *Walker v. State,* 12 Md.App. 684, 695, 280 A.2d 260 (1971) and not to "the ultimate, second-level fact: the existence or non-existence of ..." neutral, non-racial reasons for striking a juror.

When the *Tolbert* court in "[its] independent constitutional appraisal of the undisputed facts and the rest of the record" concluded "that *Tolbert* was denied equal protection under the law guaranteed him under the 14th Amendment of the Constitution of the United States by the State's use of peremptory challenges ..," *Tolbert,* 315 Md. at 24, 553 A.2d 228, it did so by resolving the second level facts quite differently than did the trial judge. In effect the Court held that the striking of young females "[b]ecause my intuition and experience tells me that young females have a difficult time coming to decisions in cases like this"

did not "present neutual, non-racial reasons". *See id.* at 24, 553 A.2d 228. That one of the female black jurors was 54 years of age was apparently a significant factor in the *Tolbert* court's decision for it stated that "[a]t least one of its peremptory challenges to black jurors appears to be exercised with a discriminatory purpose." The age and racial composition of the jurors may all be categorized as first level facts since these characteristics could readily be determined through the visual perception of the trial judge. The reasons given for their striking derive from the manifested intention of the prosecutor. Although the prosecutor's credibility and integrity enter into the formulation of the reasoning process, ultimately the decision to strike is the result of the prosecutor's conclusion and therefore falls into the category of a second level fact.

In the case *sub judice* the pattern of striking social security employees was consistent, thus eliminating the appearance of any discriminatory purpose. That pattern of striking was a first level fact and the Court's finding thereon ought not be tampered with unless clearly erroneous. *Borgen v. State,* 58 Md.App. 61, 79, 472 A.2d 114 (1984). Judge Fader's finding that the prosecutor struck all social security employees was not clearly erroneous. As in *Borgen, supra,* "declining to overrule the trial judge on his finding of first level fact(s), we constrain ourselves to analyze his conclusion." *Id.* at 80, 472 A.2d 114. Making our own independent reflective judgment as to what to make of those facts, we hold that the prosecutor's reasoning was not pretextural and adequately presented "neutral, non-racial reasons for striking" the subject jurors.

## 2. *Sufficiency of the Evidence*

Appellant contends that the evidence was insufficient for the jury to convict him of robbery with a dangerous and deadly weapon. The State counters that appellant has waived the issue for the purposes of appeal by not arguing the sufficiency of the evidence as to this count either in his motion for judgment of acquittal at the end of the State's

case or his renewed motion at the conclusion of the presentation of all the evidence.

■ Maryland Rule 4-324(a) requires that a criminal defendant "state with particularity all reasons" in support of his motion for judgment of acquittal. Failure to do so constitutes a waiver of the sufficiency of evidence on appeal. *State v. Lyles,* 308 Md. 129, 135-36, 517 A.2d 761 (1986). Our review of the record indicates that defendant did not sufficiently particularize his reasons in support of his *original* motion for judgment of acquittal as to the robbery with a dangerous and deadly weapon count. Thus, he waived the issue.

■ Even if appellant had not waived the issue, we would hold that sufficient evidence exists with which a "rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). The testimony at trial when examined in a light favorable to the prosecution indicated the following: (1) although appellant did not have a bank account with the bank, a palm print that was positively identified as appellant's was lifted from a counter in the bank shortly after the robbery; (2) it is the usual practice of the bank to clean its counters after closing every evening—thus, a rational inference could be drawn that appellant was in the bank on the day of the robbery; (3) the teller who was robbed described the robber as having similar features to the appellant; and (4) several months after the robbery the same teller identified appellant at a police line-up, stating that she was "pretty sure that he was the individual who had robbed her." Such evidence is more than sufficient to sustain appellant's conviction.

### 3. *Sentencing Under Art. 27, § 643B*

■ Article 27, § 643B(b) (1987 Repl.Vol.) provides:

(b) Mandatory life sentence. Any person who has served three separate terms of confinement in a correctional

institution as a result of three separate convictions of any crime of violence shall be sentenced, on being convicted a fourth time of a crime of violence, to life imprisonment without the possibility of parole. Regardless of any other law to the contrary, the provisions of this section are mandatory.

Appellant contends that the trial court's imposition of a life sentence without the possibility of parole was error because he has not "served three separate terms of confinement in a correctional institution."

In 1965, appellant was convicted of robbery and sentenced to five years imprisonment at the Maryland Correctional Institution in Hagerstown. In 1970, appellant was convicted of robbery with a deadly weapon and sentenced to eight years of imprisonment with the Division of Corrections. Finally, in 1976, appellant was convicted in the United States District Court for the District of Maryland of bank robbery and sentenced to twenty years imprisonment with a recommendation of commitment to the Maryland Division of Correction "so that the sentence imposed by this Court may run *concurrently* with the [1970 sentence] imposed by the State Court ..." (United States District Court, Judgment and Probation/Commitment Order, 7–2–1976) (emphasis added). Relying on *Montone v. State*, 308 Md. 599, 521 A.2d 720 (1987), appellant contends that his confinement under the 1976 federal conviction cannot serve as a predicate "separate" term of confinement because the federal judge ruled that it was to be imposed concurrently with his 1970 state conviction.

Appellant's reliance on *Montone, supra,* is wholly misplaced. In *Montone,* the State attempted to utilize two convictions stemming from a single incident obtained on February 13, 1979 as predicate separate terms of confinement. The court held that the purpose of § 643B(b) "is to identify individuals incapable of rehabilitation and lock them up forever". *Id.* at 613, 521 A.2d 720. The requirement of separate terms of confinement is intended to allow individuals an opportunity for rehabilitation. Allowing for separate

convictions, obtained on the same day, to serve as predicate separate terms of confinement thwarts the purpose of the statute by not providing for an intervening opportunity for rehabilitation.

Here, it is manifestly implicit that appellant was released from incarceration sometime during the period between his 1970 conviction and his 1976 conviction.[2] The fact that the federal court imposed a *sentence* concurrent with a sentence imposed six years earlier does not preclude that "term of confinement" from being a separate one for the purpose of applying the statute. Allowed this intervening period for rehabilitation, appellant committed the 1976 bank robbery, which constitutes a third predicate "crime of violence" for which he was confined. Thus, appellant, prior to this 1988 conviction, has served the statutorily required "three separate terms of confinement in a correctional institution."

JUDGMENT AFFIRMED. COSTS TO BE PAID BY APPELLANT.

---

**2.** To our knowledge, the banking industry had not set up branch offices inside state penal institutions.