582 A.2d 532

**Michael Wardell STANLEY**

v.

**STATE of Maryland.**

**No. 45, Sept. Term, 1990.**

Court of Special Appeals of Maryland.

Nov. 29, 1990.

Certiorari Denied March 22, 1991.

94

Michael R. Braudes, Asst. Public Defender (Alan H. Murrell, Public Defender, on brief), Baltimore, for appellant.

Gary E. Bair, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., Baltimore, and Alexander Williams, Jr., State's Atty. for Prince George's County, Upper Marlboro, on brief), for appellee.

Submitted before GARRITY, ALPERT and ROBERT M. BELL, JJ.

ALPERT, Judge.

Michael Wardell Stanley, the appellant, was found guilty by a jury in the Circuit Court for Prince George's County (Femia, J., presiding) of felony murder, robbery with a deadly weapon, and use of a handgun in the commission of a crime of violence. The court merged the robbery conviction into the murder conviction and imposed concurrent sentences of life and 20 years.

This Court affirmed in an unpublished per curiam opinion. *Stanley v. State*, No. 1175, September Term 1986 (filed April 21, 1987). The Court of Appeals granted certiorari, 310 Md. 276, 528 A.2d 1267 (1987), to examine the issue of whether the procedures used by the State violated the prohibition against racially discriminatory jury selection, as explained in *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). The Court concluded that under the standards set forth in *Batson*, a prima facie case of discrimination against black jurors was established in this case. *Stanley v. State*, 313 Md. 50, 73, 542 A.2d 1287 (1988). The Court ordered a limited remand under (then) Maryland Rule 871,[1] to allow the State an opportunity to explain the exercise of its peremptory challenges against black venire members during the selection of the petit jury.

Pursuant to the remand, a hearing was held on November 22 and 23, and December 1, 1988. At the conclusion of the hearing the trial court found that the State's reasons for striking black venire members were credible and racially neutral, and denied appellant's motion for a new trial. Appellant now files this appeal, in which his sole contention is that the State failed to carry its burden of justifying the prosecutor's exercise of peremptory challenges. We disagree, and shall affirm.

In *Batson v. Kentucky, supra,* the Supreme Court set forth the evidentiary standards and procedures to evaluate a criminal defendant's claim that he has been denied equal

---

1. The rule is currently codified as Md.R. 8–604(d).

protection through the State's use of peremptory challenges to exclude members of his race from the petit jury. Under those procedures the defendant has the initial burden to establish a prima facie case of purposeful racial discrimination in the State's exercise of its peremptory challenges. Once the defendant makes a prima facie showing, however, the burden shifts to the State to come forward with a neutral explanation for challenging jurors of the defendant's race.[2]  476 U.S. at 97, 106 S.Ct. at 1723.

In the instant case the Court of Appeals looked to the following facts and circumstances as giving rise to a prima facie showing of purposeful discrimination under the evidentiary standards of *Batson*.  Appellant is a black man; only three of the 12 members of the petit jury were black. The State used eighty percent (eight out of ten) of its peremptory challenges to strike blacks from the jury panel. Through the use of a highly skewed number of challenges, the State eliminated almost one-half of the blacks on the venire.  Moreover, only two of the excluded black jurors indicated any response to the court's voir dire questions, and of those two neither gave a response which would seem a clear basis for prosecution challenges. *Stanley*, 313 Md. at 72–73, 542 A.2d 1267.  These were the circumstances that the State was called upon to explain at the 1988 hearing.

The Court of Appeals further directed that at the hearing, the State was to present, if it could, honest, neutral, nonracial reasons for the challenges of each black potential juror who was stricken. *Id.* at 92, 542 A.2d 1267.  The Court

---

**2.**  The Supreme Court has expressly left open the question of whether a prosecutor's racially motivated peremptory challenges of jurors of a different race than the defendant violates either the defendant's or the jurors' rights to equal protection under the Fourteenth Amendment. *Holland v. Illinois,* —— U.S. ——, 110 S.Ct. 803, 811, 107 L.Ed.2d 905 (1990).  The Court of Appeals of Maryland, however, has held that a prosecutor's use of peremptory challenges to remove all prospective jurors of a different race than the defendant may not be challenged under *Batson* as a denial of the defendant's right to equal protection. *State v. Gorman,* 315 Md. 402, 554 A.2d 1203 (1989).

cautioned that the reasons would have to be legitimate, clear, and reasonably specific, as general assertions of assumed group bias [3] or broad denials of discriminatory motives would be insufficient to overcome the appellant's prima facie case. *Id.* The appellant then would be afforded the opportunity to rebut any explanations put forth by the prosecutor and to expose any justification that appeared on its face to be racially neutral, but was in fact a sham or a pretext. *Id.* The Court also pointed out, however, that the appellant had the ultimate burden of persuading the court that there had been intentional racial discrimination. *Id.* at 61, 542 A.2d 1267.

As it turned out, because of the commendable foresight of the prosecutor, Joseph B. Chazen, the State was able to reconstruct in some detail the circumstances of the jury selection that had taken place two and a half years earlier. Mr. Chazen testified extensively as to those circumstances. The case began as a death penalty case, and therefore involved a larger than usual venire and a more extensive voir dire examination. Mr. Chazen was aware of the *Batson* decision, then about one month old, and he felt it was important to record and retain as much information about the venire members as possible. During the voir dire examination he made notes on the list of potential jurors provided by the jury commissioner. He then made his own list on the evening before the final selection of the petit jury, noting which venire members remained on the panel and placing a red dot next to the names of those he definitely intended to strike and a blue dot next to those he would strike if he had enough challenges remaining. These

---

**3.** Read narrowly, the prohibition against peremptory challenges based upon "general assertions of assumed group bias" would seem to invalidate most peremptory challenges. From a closer reading of *Batson,* however, and of later case law interpreting *Batson,* it is clear that the constitutionally invalid reasons have to do with "the assumption that black jurors as a group will be unable impartially to consider the State's case against a black defendant." *Batson,* 476 U.S. at 89, 106 S.Ct. at 1719; *see also Simpkins v. State,* 79 Md.App. 687, 692, 558 A.2d 816 (1989).

lists were entered into evidence at the 1988 hearing and formed the basis for much of Mr. Chazen's recollection.

The examination at the hearing focused on these eight black venire members who were excluded from the petit jury through the State's peremptory challenges.

*Rosetta Lester* had a red dot next to her name. Mr. Chazen's notes did not reflect her age or race, but contained the information that she was employed as a counselor for the District of Columbia Youth Services, and that she had been the victim of several crimes in which no arrests were ever made. Mr. Chazen testified that he challenged her on the basis of her occupation, because it was his belief that counselors are often from a "more social work background, and more liberal in nature." In addition, he felt that Ms. Lester might harbor some bitterness about police work, since she had been victimized several times in crimes where no arrests were ever made.

*Joyce Johnson* had a blue dot next to her name. The notes reflect that she was 42 years old, divorced, black, and female. The word "counselor" appears twice, and is underlined for emphasis. In addition, the notes say "avoided eye contact" and "very serious look *at me*." Mr. Chazen testified that he challenged Ms. Johnson based upon her occupation and her demeanor.

*Belton Edwards* had a blue dot next to his name. The notes reflect that he was 47 years old, married, black, and male, and that he worked for the Department of Recreation. Mr. Chazen testified that he challenged Mr. Edwards on the basis of his occupation, explaining that: "He worked, I presumed based on that job, he worked with people similar to Mr. Stanley as far as his age and a young man, and I had a problem with the occupation."

*Claude Kinard* had a red dot next to his name. The notes reflect that he was 65 years old, married, black, and male. They also reflect Mr. Kinard's answer to one of the questions on voir dire—that his nephew had been charged with murder in the past, but had been "exonerated." Mr.

Chazen explained that this situation was "too parallel" for his comfort, and he was concerned that this incident may have created some bias in Mr. Kinard against the State.

*Tracie Ann Simmons* was identified in Mr. Chazen's notes as 19 years old, single, black, and female. Her age and marital status were underlined. *Melodie Lewis* was also identified as 19 years old, single, black, and female. *Althea Trent* was identified as 19 years old, single, and female. Her race was unspecified. Each of these venire members had a red dot next to her name. In addition, *Laurie Riggs,* a 20 year old, single female, also had a red dot and the word "strike" underlined twice next to her name. At the time Mr. Chazen placed the red dot next to her name, however, he had her erroneously listed as white. The record reflects some confusion as to Ms. Riggs' actual race, but it was later stipulated for purposes of the *Batson* analysis that Ms. Riggs is black. In any event, her age and marital status are underlined twice. As to each of these venire members, Mr. Chazen testified that he challenged them on the basis of their youthful age. Appellant was 23 at the time of the murder; 25 at the time of the trial. Mr. Chazen believed that young people might be more sympathetic to appellant, and might be more reluctant to impose the death penalty on a young defendant. Mr. Chazen wanted older, more mature jurors, people who had had some time to grow more conservative as they became "fed up" with crime. He was concerned that young people might not take a drug-related murder as seriously as older jurors. In addition, Mr. Chazen did not favor unmarried jurors, at one point offering his opinion that unmarried people are "less settled."

The defense attempted to persuade the court through argument that the prosecutor's explanations were essentially a sham, and suggested that the notes might not have been taken contemporaneously with the jury selection but rather might have been reconstructed some time later to bolster the State's position. The trial judge was not persuaded. He found instead that the notes were contempora-

neous with the jury selection and that the prosecutor's explanations were honest and credible, were supported by the information contained in the notes, and were racially neutral.

The trial judge's findings as to the contemporaneous nature of the notes, and as to Mr. Chazen's honesty and credibility, are factual findings that are entitled to great deference by a reviewing court. *See Batson*, 476 U.S. at 98, n. 21, 106 S.Ct. at 1724, n. 21. This deference, however, applies only to first level fact finding. We must make our own independent constitutional appraisal as to the ultimate second level fact, the existence or non-existence of neutral, nonracial reasons for striking the black venire members. *Chew v. State*, 317 Md. 233, 245, 562 A.2d 1270 (1989); *see also Simpkins v. State*, 79 Md.App. 687, 694–95, 558 A.2d 816 (1989). Moreover, the exercise of each and every peremptory challenge must be free from a racially discriminatory purpose. As the Court of Appeals emphasized in *Stanley:* "[T]he State will not be allowed 'one free discriminatory strike.' *Any* violation requires a new trial." 313 Md. at 93, 542 A.2d 1267. The challenges, however, are not to be examined in a vacuum. Rather, each must be examined in light of the circumstances under which it was exercised, including an examination of the explanations offered for other peremptory strikes. *Id.* at 77, 542 A.2d 1267.

In reviewing the State's exercise of its peremptory challenges in this case, we are reminded that the peremptory challenge is still considered "one of the most important of the rights in our justice system." *State v. Gorman*, 315 Md. 402, 404, 554 A.2d 1203 (1989). The State's reasons for the exercise of its peremptory challenges need not rise to the level justifying exercise of a challenge for cause. *Batson*, 476 U.S. at 97, 106 S.Ct. at 1723. The only limitation on these reasons is that they must not violate the Fourteenth Amendment's guarantee of equal protection. The

reasons need not be scientifically verifiable or politically pleasing. They need only be honest and racially neutral.

In this case the prosecutor offered one or more of the following reasons as the basis for each of his peremptory challenges: age, occupation, demeanor, and prior experience with the criminal justice system. His primary concern was to remove young people from the jury panel. He repeatedly stressed his belief that young people were more likely to empathize with appellant and less likely to impose the death penalty, especially in a drug-related murder. Moreover, he felt that older jurors were more likely to be conservative and to favor the State. He therefore challenged Tracie Ann Simmons (19), Melodie Lewis (19), Althea Trent (19), and Laurie Riggs (20) on the basis of their youthful age (and, to a lesser degree, their status as unmarried people).

The prosecutor's explanation as to each of these challenges is entirely consistent with the evidence.[4] Indeed, appellant does not suggest *here* that his explanation was a sham. *Compare Tolbert v. State*, 315 Md. 13, 553 A.2d 228 (1989) (prosecutor's explanation that he did not want young females on the jury did not present a neutral, non-racial reason for striking black females who were 38 and 54 years old). Instead, he simply asserts that by permitting a prosecutor to strike *all* young black jurors, the "entire perspective of the group is eliminated," and that the prosecutor's justification based upon age should therefore be rejected.

Although not fully articulated, appellant is in fact pressing a Sixth Amendment claim here: that the elimination of this age group's perspective deprived him of a jury

---

**4.** Mr. Chazen highlighted every venire member under the age of 30 who appeared on the jury commissioner's list. On his own list he identified 11 potential jurors under the age of 25. Of those 11 he assigned seven red dots, 3 blue dots, and underscored the age of one. Six of the 11 jurors turned out to be white, five were black; but at the time Mr. Chazen assigned a red dot to Althea Trent she was not identified by race, and at the time he assigned a red dot to Laurie Riggs he had erroneously identified her as white.

selected from a fair cross-section of the community. The short answer is that the Sixth Amendment cross-section component does not apply to the exercise of peremptory challenges. In *Lockhart v. McCree,* 476 U.S. 162, 106 S.Ct. 1758, 90 L.Ed.2d 137 (1986), decided one week after *Batson,* the Supreme Court stated:

> We have never invoked the fair-cross-section principle to invalidate the use of either for-cause or peremptory challenges to prospective jurors, or to require petit juries, as opposed to jury panels or venires, to reflect the composition of the community at large. The limited scope of the fair-cross-section requirement is a direct and inevitable consequence of the practical impossibility of providing each criminal defendant with a truly "representative" petit jury.

*Id.* at 173, 106 S.Ct. at 1765. And more recently, in *Holland v. Illinois,* —— U.S. ——, 110 S.Ct. 803, 107 L.Ed.2d 905 (1990), in which a white defendant claimed that the prosecutor's use of peremptory challenges to exclude all blacks from the jury deprived him of his right to be tried by a representative cross-section of the community, the Supreme Court specifically held that the exercise of peremptory strikes is not open to examination on Sixth Amendment grounds. *Id.* 110 S.Ct. at 811. As the Court explained:

> The Sixth Amendment requirement of a fair cross section on the venire is a means of assuring, not a *representative* jury, (which the Constitution does not demand), but an *impartial* one (which it does). Without that requirement, the State could draw up jury lists in such manner as to produce a pool of prospective jurors disproportionately ill disposed towards one or all classes of defendants, and thus more likely to yield petit juries with similar disposition. The State would have, in effect, unlimited peremptory challenges to compose the pool in its favor. The fair-cross-section venire requirement assures, in other words, that in the process of selecting the petit jury the prosecution and defense will compete on an equal basis.

But to say that the Sixth Amendment deprives the State of the ability to "stack the deck" in its favor is not to say that each side may not, once a fair hand is dealt, use peremptory challenges to eliminate prospective jurors belonging to groups it believe would unduly favor the other side.

*Id.* 110 S.Ct. at 807 (emphasis in the original). *See also Bailey v. State,* 63 Md.App. 594, 493 A.2d 396, *cert. denied,* 304 Md. 296, 498 A.2d 1183 (1985) (age groups are not "distinctive groups" for purposes of fair cross-section analysis).

We are concerned here with racially discriminatory reasons for the exercise of peremptory challenges, which are prohibited under the Fourteenth Amendment. We are not concerned with the prosecutor's efforts to eliminate the "entire perspective" of racially neutral groups. There is no real dispute in this appeal that these four venire members were challenged because they were young, not because they were black. Age is a classic basis for peremptory challenge, for both prosecutors and defense attorneys. Where age is truly the reason for the challenge, as it was found to be in this case, there is no *Batson* violation.

The prosecutor also explained a number of his peremptory challenges as based upon the prospective juror's occupation. Appellant particularly attacks the challenge of Belton Edwards, the juror who worked for the Department of Recreation. The prosecutor explained that people who work with the Department of Recreation frequently work with young men similar to appellant, keeping them occupied and providing programs for them. Appellant asserts that this explanation is sufficiently incomprehensible to the point that it may be inferred that it is, in fact, a pretext. To the contrary, we have no difficulty in comprehending why a prosecutor might fear that someone who regularly works with young people similar to the defendant may be inclined to sympathize with the defendant. This explanation is sufficiently tailored to the particular facts of the case that it raises no such inference.

■ The prosecutor also explained his challenges of Rosetta Lester and Joyce Johnson on the basis of their occupations. They were both counselors. The prosecutor reasoned that counselors are often from "a social work background" and more liberal in outlook; they often work with young people and are unlikely to favor the State in criminal prosecutions. No doubt the prosecutor shared the bias of the trial judge in Nebraska who felt "there is a tendency on the part of people engaged in social services to blame others than the individual involved after a wrongful act is done." *State v. Walton*, 227 Neb. 559, 418 N.W.2d 589, 593 (1988) (upholding strike of prospective juror married to a county social services worker).

In any event, appellant does not challenge the peremptory removal of all counselors from the petit jury on equal protection grounds. Indeed, such a challenge would be futile. He focuses instead on the peremptory challenge of one of the counselors, Joyce Johnson, who was also challenged because of her demeanor. Mr. Chazen explained that Ms. Johnson had avoided direct eye contact with him, but that he had seen her giving him a "very serious look" during the individual voir dire regarding capital punishment.

The appearance and demeanor of a prospective juror has long been the actual basis for racially neutral peremptory challenges by attorneys in both civil and criminal cases. But as the Court of Appeals pointed out in *Chew v. State*, 317 Md. 233, 247, 562 A.2d 1270 (1989), this may be a difficult explanation to sustain under a *Batson* challenge. For one thing, the demeanor of a juror is rarely a matter of record.[5] For another, the prosecutor's interpretation of a juror's demeanor is open to a particularly insidious danger described by Justice Marshall in his concurring opinion in *Batson:*

---

5. Although in this case the notes do reflect Mr. Chazen's observation of Ms. Johnson's demeanor.

A prosecutor's own conscious or unconscious racism may lead him easily to the conclusion that a prospective black juror is "sullen," or "distant," a characterization that would not have come to his mind if a white juror had acted identically. A judge's own conscious or unconscious racism may lead him to accept such an explanation as well supported.

*Batson*, 476 U.S. at 106, 106 S.Ct. at 1728 (Marshall, J., concurring).

In *Chew*, the Court of Appeals found that the State had failed to rebut the defendant's prima facie case of purposeful racial discrimination in the selection of the petit jury, when the sole explanation offered for striking one black juror was that she appeared immobile, "stone faced," and unsmiling. The Court pointed out that the State has the burden of showing (1) a reason other than the race of the juror did exist, and (2) the reason has some reasonable nexus to the case and was in fact the motivating factor in the exercise of the challenge. 317 Md. at 247, 562 A.2d 1270. Although the State failed to meet that burden in *Chew*, the Court stated that under the appropriate circumstances demeanor could be found as an acceptable reason for what might otherwise appear to be a racially discriminatory challenge. *Id.*

We think in this case the State met its burden with regard to the peremptory challenge of Ms. Johnson. The trial court found, and we see no basis to hold otherwise, that the motivating factor in the exercise of the challenge was that she was a counselor and "from a social work background." The fact that this legitimate, racially neutral reason was coupled with doubts regarding her demeanor does not require rejection of the State's explanation in this instance.

Finally, Claude Kinard was challenged on the basis of his prior experience with the criminal justice system—his nephew had been charged with murder and had been, in Mr. Kinard's own words, "exonerated." Indeed, prior experi-

ence with the criminal justice system either as accused or victim, or friend or relative of an accused or victim, is considered so pertinent it is commonly inquired into on voir dire, as such experience may often support a challenge for cause. The peremptory challenge offers the parties an opportunity to reject the prospective juror's assertion that his prior experience in no way would affect his ability to render a fair and impartial verdict. Mr. Kinard's response did not have to provide a "clear choice" for prosecution challenge, *Stanley*, 313 Md. at 73, 542 A.2d 1267; it was sufficient that his experience was "too parallel" for the prosecutor's comfort.

In sum, our independent appraisal leads us to conclude that the State's exercise of each peremptory challenge was motivated by racially neutral reasons, and that appellant was not denied equal protection in the jury selection process.

JUDGMENT AFFIRMED; APPELLANT TO PAY THE COSTS.