586 A.2d 810

**Troy Tyrone ADAMS**

v.

**STATE of Maryland.**

**No. 781, Sept. Term, 1990.**

Court of Special Appeals of Maryland.

March 5, 1991.

378

Michael R. Malloy, Asst. Public Defender (Stephen E. Harris, Public Defender, on the brief), Baltimore, for appellant.

Annabelle L. Lisic, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., Baltimore, and Alexander Williams, Jr., State's Atty. for Prince George's County, Upper Marlboro, on the brief), for appellee.

Argued before BISHOP, ROBERT M. BELL and CATHELL, JJ.

CATHELL, Judge.

Troy Tyrone Adams, the appellant, was convicted by a jury of common law robbery, common law assault and battery, and theft of property worth less than $300. The trial judge merged the theft conviction into the robbery conviction, and sentenced Adams to concurrent sentences of ten years for robbery and three years for assault and battery. The ten year sentence was subsequently reduced to seven years. Adams raises three issues on this appeal:

I. Did the lower court err by allowing the State to use a peremptory challenge in a racially discriminatory manner?

II. Was the evidence sufficient to sustain Adam's convictions?

III. Did the trial court err by failing to merge Adam's conviction for assault and battery into his conviction for robbery?

We shall first discuss the sufficiency issue.

## SUFFICIENCY

Adams attacks the sufficiency of the evidence in three ways. He argues first that Ms. Buckley had a "very

limited opportunity to see the thief"; second, that he is facially scarred and the person described as Ms. Buckley's mugger was not; and that her testimony was contradicted by Adams' mother, who testified that Adams was with her at the time of the crime.

> [T]he standard to apply is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."

*Tichnell v. State,* 287 Md. 695, 717, 415 A.2d 830 (1980) (quoting *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979) (emphasis in original). *See also Joiner v. State,* 82 Md.App. 282, 294, 571 A.2d 844, *cert. granted,* 320 Md. 312, 577 A.2d 362 (1990). The weight assigned to the evidence presented is a matter for the jury to determine. *Branch v. State,* 305 Md. 177, 184, 502 A.2d 496 (1986). Identification by one eyewitness, if believed by the finder of fact, is sufficient to prove criminal agency. *Id.* at 183, 502 A.2d 496; *Johnson v. State,* 75 Md.App. 621, 628–29, 542 A.2d 429 (1988).

In the case at bar, Alice Buckley testified that on the night of June 6, 1989, she was walking along Rhode Island Avenue in Prince George's County when someone approached her from behind and began pulling at her purse. She struggled, and was pulled to the ground before the attacker succeeded in wresting the purse from her. Ms. Buckley "got a very, very clear look at him" as he stood an estimated four feet from her. She identified the appellant as her assailant. Ms. Buckley's testimony was sufficient to establish all the elements of the crimes charged. We perceive no error.

## JURY SELECTION

Adams asserts that the State exercised one of its peremptory strikes in a racially discriminatory manner during jury selection.

The issue of racially discriminatory jury selection was discussed by the Supreme Court in *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986) (overruling *Swain v. Alabama,* 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965)). In *Batson,* the Supreme Court held that a prosecutor's exercise of peremptory challenges to strike African–Americans during jury selection in a criminal trial, where the defendant is of the same race, may raise an inference that the strikes were based upon impermissible racial motives.

■ The Maryland Court of Appeals following *Batson* in *Stanley v. State,* 313 Md. 50, 542 A.2d 1267 (1988), and in *State v. Gorman,* 315 Md. 402, 554 A.2d 1203 (1989), summarized the preliminary requirements imposed on a defendant:

The guidelines by which a criminal defendant can meet the burden of establishing a prima facie case of discrimination are clearly set out. The defendant

1) must show that he is a member of a cognizable racial group, and that the prosecutor has exercised peremptory challenges to remove from the venire members of the defendant's race; [1]

2) is entitled to rely on the fact that peremptory challenges constitute a jury selection practice that permits those to discriminate who are of a mind to discriminate;

---

**1.** *Gorman* involved an allegation of discrimination by a white defendant who alleged that the State improperly excluded blacks from the jury. The Court limited the application of *Batson* to situations, where the defendant and the struck jury panel member are of the same race, but observed that this "question was not answered in *Batson,* and we look forward to the final determination of that matter by the Supreme Court...." *Id.* [315 Md.] at 416, 554 A.2d 1203. In *Holland v. Illinois,* 493 U.S. 474, 110 S.Ct. 803, 107 L.Ed.2d 905 (1990), the Supreme Court answered the question by holding that a white defendant has standing to raise a Sixth Amendment challenge to the exclusion of blacks from his jury. The case at bar involves a black defendant challenging the exclusion of a black panel member, and whatever the status of *Gorman* in light of *Holland,* the basic *Batson* analysis presented in it is pertinent.

3) must show that those facts and any other relevant circumstances raise [a rebuttable presumption] that the prosecutor used that practice to exclude veniremen from the petit jury on account of their race.

This combination of factors in the empaneling of the petit jury establishes the requisite rebuttable presumption of purposeful discrimination. The trial judge must determine whether the defendant has made the requisite showing, considering all relevant circumstances.... If the trial judge finds that the defendant has failed to establish a prima facie case, there is no obligation on the prosecutor to offer any explanation for the use of a peremptory challenge and no entitlement on the part of the defendant to a hearing on the issue.

*Id.* at 410–11, 554 A.2d 1203 (bracketed material in original, citations omitted).

Once the defendant makes a prima facie showing, the burden shifts to the State to come forward with a neutral explanation for challenging black jurors.... [this] explanation need not rise to the level justifying exercise of a challenge for cause. But the prosecutor may not rebut the defendant's prima facie case of discrimination by stating merely that he challenged jurors ... on the assumption—or his intuitive judgment—that they would be partial to the defendant because of their shared race.... Nor may the prosecutor rebut the defendant's case merely by denying that he had a discriminatory motive or "affim[ing] [his] good faith in making individual selections."

*Batson,* 106 S.Ct. at 1723–24 (quoting *Alexander v. Louisiana,* 405 U.S. 625, 632, 92 S.Ct. 1221, 1226, 31 L.Ed.2d 536 (1972)). *See also Chew v. State,* 317 Md. 233, 247, 562 A.2d 1270 (1989) (once the burden shifts, the State must show "that 1) a reason other than the race of the juror did exist, and 2) the reason has some reasonable nexus to the case and was in fact the motivating factor in the exercise of the challenge.") A single racially discriminatory peremptory strike is a constitutional violation. *Tolbert v. State,* 315

Md. 13, 22–23, 553 A.2d 228 (1989); *Stanley*, 313 Md. at 92–93, 542 A.2d 1267.

During jury selection in the case at bar, the following colloquy ensued:

MS. BELTON [prosecutor]: I would like to strike Juror 12, Miss Dickerson.

\*      \*      \*      \*      \*      \*

MR. SINGMAN [defense]: I would like a Batson challenge.

THE COURT: He wants to know why you are doing it.

MS. BELTON: The only—I don't know which one she was. The reason why I wanted to strike her was a—the location where she was from, Suitland. Okay.

And the second reason was because there are other jurors that I want to get on the jury. I didn't even know which one she was.

THE COURT: The Court is satisfied that it wasn't done for racial purposes.

MR. SINGMAN: Your Honor—

THE COURT: I am satisfied.

After closing arguments, the appellant was allowed to read into the record the jurors' towns of residence.

The appellant argues that the significance of Ms. Dickerson's town of residence was never explained by the prosecutor, and that the prosecutor's second reason only established that she wanted another juror in Ms. Dickerson's place.

██ Adams had established the first two elements of a *prima facie* case at the time of his challenge, as it was obvious that both he and Dickerson were black, and no act on his part was required to demonstrate his reliance on the presumption of opportunity to discriminate which is inherent in the exercise of a peremptory challenge. He did not, however, articulate any reasons as to why the prosecutor's

strike was discriminatory.[2] As a result, the trial judge made no finding of the existence of a *prima facie* case. Indeed, given the paucity of justification for the "Batson challenge," it might not have been possible for him do so.

We note that in *Trice v. State*, 310 Md. 695, 531 A.2d 682 (1987), the companion case to *Stanley*, the trial judge did not make an express finding of a *prima facie* case; instead, he asked the prosecutor to explain the reasons for the strikes. The Court held that the act of asking was an implied finding that a *prima facie* case of discrimination existed. *Stanley*, 313 Md. 50, 83, 542 A.2d 1267. *Stanley* (and *Trice*) are distinguishable because there, the defense counsel supported the challenge by stating that the only black on the jury panel had been struck. *Id.* at 81–82, 554 A.2d 1203. See also *Bailey v. State*, 84 Md.App. 323, 330, 579 A.2d 774 (1990). In the case at bar, we cannot hold that the judge's request that the prosecutor justify her strike is an implied finding due to the complete lack of any reasons given to support the challenge. "[T]he elaborate responses of *Batson* are not intended to be a knee-jerk reaction every time a charge of discrimination is laid."[3] *Bailey*, 84 Md. App. at 326–27, 579 A.2d 774. We, therefore, hold that Adams did not present a *prima facie* case of discriminatory exercise of the State's peremptory strike. If we were to hold that a mere statement of challenge is sufficient to meet the burden, then in any situation where a juror of the defendant's race is peremptorily struck, the defendant will be able to establish a presumption of discrimination irrespective of the circumstances of the case. This would be

---

**2.** The juror who replaced Ms. Dickerson, apparently without objection from the prosecutor, was also black. We fail to see how striking a black juror, who is replaced by a black juror, in the absence of any other relevant circumstances, creates a presumption that the excused juror was stricken because of her race or helps a defendant establish a *prima facie* case.

**3.** We note that the manner and type of discrimination claims that could be alleged under some interpretations of *Batson* are limited only by the imaginations of counsel.

contrary to the requirements set forth in *Batson* and *Stanley*.

■ Even assuming, *arguendo*, that the judge made a finding of *prima facie* discrimination, his ruling, made after consideration of the justifications given by the prosecutor, is accorded great deference.

> In reviewing the trial judge's decision [regarding the existence of a *prima facie* case], appellate courts do not presume to second-guess the call by the "umpire on the field" either by way of *de novo* fact finding or by way of independent constitutional judgment. It is the trial judge who enjoys the immeasurably superior vantage point to sense the mood and to catch the tone of the entire proceeding.

*Bailey,* 84 Md.App. at 328, 579 A.2d 774. *See also Simpkins v. State,* 79 Md.App. 687, 694, 558 A.2d 816 (1989) (trial judge's factual finding concerning prosecutor's proffered reasoning is accorded due deference). We hold that the judge did not commit reversible error.

## MERGER

The appellant, citing *Nightingale v. State,* 312 Md. 699, 542 A.2d 373 (1988), contends that his conviction for "assault and battery" should have been merged into the robbery conviction because both crimes were part of the same act. He distinguishes *Snowden v. State,* 76 Md.App. 738, 548 A.2d 165 (1988), which held that assault and battery did not merge into armed robbery, by contending that he did not use force in excess of that required to take the victim's property.[4]

---

4. The appellant also argues that the "rule of lenity", otherwise known as the doctrine of merger by legislative intent, requires merger. "[T]he rule of lenity is simply a rule of statutory construction.... Obviously a rule of statutory construction has little relevance to an offense not created by Maryland statute." *White v. State,* 318 Md. 740, 746, 569 A.2d 1271 (1990). *See also Dillsworth v. State,* 308 Md. 354, 364, 519 A.2d 1269 (1987). We will not, therefore, apply the doctrine.

The Court of Appeals granted certiorari in *Snowden* and, subsequent to the submission of briefs in the instant case, rendered its decision. It reversed this Court, holding that the assault and battery in that case merged into armed robbery. *Snowden v. State*, 321 Md. 612, 583 A.2d 1056 (1991). In doing so, it applied the *Nightingale* rationale, stating that from the rationale behind the convictions, it was not possible to determine with certainty whether the convictions were based on separate acts. The Court, resolving the ambiguity in the appellant's favor, merged the convictions.

We, too, also will apply *Nightingale* to the case *sub judice*. *Nightingale* was a consolidated case in which the appellants had been convicted of both child abuse and various sexual offenses, and had received separate sentences. The Court held that the sexual offense merged into child abuse.[5] The Court of Appeals stated that, where a "multi-purpose" criminal statute is involved, the court:

> must construct from the alternative elements within the statute the particular formulation that applies to the case at hand. It should rid the statute of alternative elements that do not apply. It must, in other words, treat a multipurpose statute written in the alternative as it would treat separate statutes. The theory behind the analysis is that a criminal statute written in the alternative creates a separate offense for each alternative and should therefore be treated for double jeopardy purposes as separate statutes would.

*Nightingale*, 312 Md. at 706–07, 542 A.2d 373 (quoting *Pandelli v. United States*, 635 F.2d 533, 537 (6th Cir.1980)). *See White v. State*, 318 Md. 740, 569 A.2d 1271 (1990)

---

5. One appellant (Nightingale) had been convicted of child abuse and sexual offense in the second degree; the other (Myers) had been convicted of two counts each of second, third and fourth degree sexual offense and child abuse. Two consecutive fifteen-year sentences were imposed in Nightingale's case. Myers received two sets of sentences: the first was composed of four concurrent sentences which were to run consecutively to the other set.

(conviction of child abuse merges with murder conviction where both convictions are based on the same act or acts). *Nightingale* applied this analysis to *statutory* crimes expressed in the disjunctive, but the same analysis is pertinent to common law crimes with alternative elements. *See Snowden,* 76 Md.App. at 742, 548 A.2d 165 ("[b]y analogy, when ... an offense such as common law robbery (with a deadly weapon) includes alternate elements ... we should abandon, for analytical purposes, the elements that do not apply.")

The precedential value of *Nightingale* is of some concern, as the Legislature overruled it by virtue of 1990 Md. Laws ch. 604 (which repealed and re-enacted, with amendments, Md.Ann.Code art. 27, § 35A (1957, 1987 & Supp.1991)):

> FOR the purpose of reversing the holdings of the Maryland Court of Appeals in the cases of *Nightingale v. State* ... and *White v. State* ... by providing that if a conviction is entered against an individual for murder, rape, sexual offense, any sex crime, or any crime of physical violence, and a conviction is also entered for child abuse, a court may impose a sentence for the other offenses separate from and consecutive to or concurrent with a sentence imposed for child abuse....

1990 Md.Laws at 2636–37 (overstricken and parenthetical material omitted, underlining omitted). The amendment was approved on May 29, 1990, and became effective on July 1, 1990.[6]

---

**6.** During the transitional period where child abuses committed before ch. 604's effective date are being tried after that date, the issue of retroactive application of the statute may be relevant. To that effect, see *Spielman v. State,* 298 Md. 602, 608–09, 471 A.2d 730 (1984); *Anderson v. Department of Health and Mental Hygiene,* 310 Md. 217, 528 A.2d 904 (1987), *cert. denied,* 485 U.S. 913, 108 S.Ct. 1088, 99 L.Ed.2d 247 (1988); *Grandison v. State,* 305 Md. 685, 753, 506 A.2d 580, *cert. denied,* 479 U.S. 873, 107 S.Ct. 38, 93 L.Ed.2d 174, *reh. denied,* 479 U.S. 1001, 107 S.Ct. 611, 93 L.Ed.2d 609 (1986); *Hawkins v. State,* 302 Md. 143, 486 A.2d 179 (1985); *Bergstein v. State,* 76 Md.App. 554, 547 A.2d 668 (1988).

Whatever the consequences of the Legislature's attempted reversal of *Nightingale* in child abuse cases arising after the effective date of the amendment, in this appeal the underlying rationale for the Court of Appeals' holding is still in full effect. The merger analysis presented in *Nightingale* is, therefore, still applicable to offenses not involving child abuse.

Common law robbery is defined as "the felonious taking and carrying away of the personal property of another, from his person or in his presence, by violence or putting in fear." *West v. State,* 312 Md. 197, 202, 539 A.2d 231 (1988). *See also Snowden v. State,* 321 Md. 612, 583 A.2d 1056 (1991). The crime of assault has been defined as "(1) an attempt to commit a battery or (2) an intentional placing of another in apprehension of receiving an immediate battery." *Dixon v. State,* 302 Md. 447, 457, 488 A.2d 962 (1985) (quoting R. Perkins, *Perkins on Criminal Law* 114 (2d ed. 1989). See also *Taylor v. State,* 52 Md.App. 500, 504, 450 A.2d 1312 (1982), *cert. denied,* 295 Md. 691 (1983). A battery is the unlawful application of force to the person of another. *Anderson v. State,* 61 Md.App. 436, 440, 487 A.2d 294, *cert. denied,* 303 Md. 295, 493 A.2d 349 (1985). Looking at the facts, we see that the "assault and battery" of which Adams was convicted consisted of him wresting the purse from the victim, *i.e.,* the application of physical force. She testified that

> Somebody came up behind me and started pulling at my purse.... I realized immediately what was happening and I started swinging with the umbrella and I made contact twice with the umbrella and the person got hold of my purse straps and pulled me down so that I was facing down the hill instead of up.... And then he grabbed my purse.

There was no physical contact between Adams and the victim after this confrontation. Adams was actually convicted of battery. *See Anderson,* 61 Md.App. at 440 n. 1, 487 A.2d 294 (term "assault and battery" is used as a convenience). We therefore disregard, in our merger analy-

sis, the assaultive element of "attempted battery," and the alternative robbery element of taking property by threat of force. We are left with these elements: for battery, the unlawful application of physical force; for robbery, 1) the felonious taking and carrying away 2) the property of another, 3) from her person 4) by violence.

■ Once the initial winnowing of irrelevant elements has been accomplished, the "required evidence" test is applied. *Vogel v. State,* 76 Md.App. 56, 61, 543 A.2d 398 (1988), *aff'd,* 315 Md. 458, 554 A.2d 1231 (1989). The same act or transaction will be treated as a violation of two separate statutory provisions if each requires proof of a fact which the other does not. *Dillsworth v. State,* 66 Md.App. 263, 271, 503 A.2d 734 (1986), *aff'd,* 308 Md. 354, 519 A.2d 1269 (1987).[7]

> If each offense requires proof of a fact which the other does not, the offenses are not the same and do not merge. However, if only one offense requires proof of a fact which the other does not, the offenses are deemed the same, and separate sentences for each offense are prohibited.

---

**7.** This is not to be confused with the "actual evidence" approach, which would merge offenses whenever the facts actually found at the trial are substantially the same for both offenses. The actual evidence test has been rejected as the general standard for determining merger. *Dillsworth,* 308 Md. at 357, 519 A.2d 1269. *See also State v. Ferrell,* 313 Md. 291, 545 A.2d 653 (1988) (offenses of armed robbery and use of a handgun in the commission of a "crime of violence" robbery, both of which were charged as a result of the same act of robbery with a handgun, are considered the same offense under the required evidence test). *Compare Cunningham v. State,* 318 Md. 182, 567 A.2d 126 (1989) (separate sentences for possession of heroin with intent to distribute and possession of cocaine with intent to distribute permissible, even though both drugs were possessed simultaneously in a single bag); *Randall Book Corp. v. State,* 316 Md. 315, 558 A.2d 715 (1989) (punishing bookstore operator for 116 offenses of display of sexual material based on 116 different magazines did not violate double jeopardy prohibition against multiple punishments for the same offense). *See also Hankins v. State,* 80 Md.App. 647, 565 A.2d 686 (1989); *Green v. State,* 79 Md.App. 506, 511, 558 A.2d 441 (1989); *Nance v. State,* 77 Md.App. 259, 265–66, 549 A.2d 1182 (1988).

**390**

*Nightingale,* 312 Md. at 703, 542 A.2d 373 (quoting *Newton v. State,* 280 Md. 260, 268, 373 A.2d 262 (1977)). However, separate acts resulting in separate insults to the victim may be separately charged and punished, even though they occur as part of the same criminal transaction. *State v. Boozer,* 304 Md. 98, 105, 497 A.2d 1129 (1985).

In the case at bar, we do not think that the appellant separately battered his victim. The facts make it plain that there was no force applied to the person of the victim other than that essential to complete the robbery. He pulled at the purse until Ms. Buckley let go. Under the required evidence test, that battery is a lesser included offense of the robbery.

THE CONVICTION FOR ASSAULT AND BATTERY IS MERGED INTO THE CONVICTION AND 10–YEAR SENTENCE FOR ROBBERY; THE THREE YEAR SENTENCE FOR ASSAULT AND BATTERY IS VACATED. THE JUDGMENT IS OTHERWISE AFFIRMED; COSTS TO BE DIVIDED EQUALLY BETWEEN PRINCE GEORGE'S COUNTY AND THE APPELLANT.