596 A.2d 629

**STATE of Maryland**

v.

**Robert William GORMAN.**

**No. 147, Sept. Term, 1987.**

Court of Appeals of Maryland.

Oct. 8, 1991.

Mary Ellen Barbera, Asst. Atty. Gen. and J. Joseph Curran, Jr., Atty. Gen., both on brief, Baltimore, for petitioner.

José Felipé Anderson, Asst. Public Defender and Stephen E. Harris, Public Defender, both on brief, Baltimore, for respondent.

Reargued before MURPHY, C.J., and ELDRIDGE, RODOWSKY, McAULIFFE, CHASANOW and ROBERT M. BELL, JJ., and CHARLES E. ORTH, Jr., Judge of the Court of Appeals (Retired, Specially Assigned).

McAULIFFE, Judge.

Robert William Gorman was convicted in 1985 of armed robbery and a handgun violation and was sentenced as a repeat offender to life without parole. His convictions were affirmed by the Court of Special Appeals in an unreported opinion, and we denied certiorari. The United States Supreme Court granted certiorari, vacated the judgment of the Court of Special Appeals, and remanded the case for further consideration in light of *Griffith v. Kentucky*, 479 U.S. 314, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987). *Gorman v. Maryland*, 480 U.S. 913, 107 S.Ct. 1363, 94 L.Ed.2d 680 (1987). The issue raised by the defendant involved the State's use of peremptory challenges against black venirepersons. The Court of Special Appeals, in an unreported opinion, reversed the judgment of the trial court and ordered a new trial. This Court granted certiorari and reversed, a majority of the Court holding, *inter alia*, that a white defendant could not challenge the State's use of peremptory challenges against black venirepersons on equal protection grounds. *State v. Gorman*, 315 Md. 402, 416, 554 A.2d 1203 (1989).

The Supreme Court, after deciding in *Powers v. Ohio*, 499 U.S. ——, 111 S.Ct. 1364, 1373, 113 L.Ed.2d 411 (1991), that "a defendant in a criminal case can raise the third-party equal protection claims of jurors excluded by the prosecution because of their race," granted Gorman's petition for writ of certiorari, vacated the judgment of this Court, and remanded the case to us for further consideration. *Gorman v. Maryland*, —— U.S. ——, 111 S.Ct. 1613, 113 L.Ed.2d 712 (1991).

Voir dire and jury selection in this defendant's case took place on 5 and 6 March 1985. At the conclusion of the proceedings, and before the jury had been sworn, the defendant's attorney complained that the State had systematically excluded black jurors by the use of its peremptory challenges:

> Your honor, if it please the court, I would like to put on the record—it's my understanding from what I observed,

the method of selection of the jurors in the past two days, that there were only two non-caucasians called for the jury duty and I understand they are done randomly and they are selected from the voter's roll, but I would like the record to reflect that there were thirty-six—I don't know the exact number, but there were only two non-caucasians on those panels and both of which were initially selected for jury duty on this case, which I would like the record to reflect that the State's Attorney systematically through exercise of peremptory challenge, did exclude those two from the jury and I would like the record to so reflect that.

The prosecutor believed he was under no obligation to explain his peremptory challenges:

[A]s to my peremptory strikes, the case law is quite clear in this area, neither defense nor the court for that matter can indicate to me, similar to a nol pros situation, who I can strike or who I can't. It's absolutely discretionary on my part and that is the status of the case law as I know it to be at this time. So the argument advised by the defense attorney holds no water whatsoever.

The trial judge declined to take any further action on the defendant's complaint:

The only two black individuals on the panel, and they were stricken by the State, peremptory strikes, are just that, and they may be excused for any reason and unless you can show some distinct prejudice to the defendant, I don't see where that is a factor that would be taken into consideration in the case. I think it should be noted for the record, that Mr. Gorman himself is white. So I don't see—you have your objection for the record. However, I do not see that your client is prejudiced by the State exercising their peremptory strikes. Even assuming that I could do something about it, which I don't think that I can, because they are peremptory strikes.

The Supreme Court has long held that a black defendant is denied equal protection of the laws when put on trial before a jury from which members of his or her race have

been purposefully excluded. *Strauder v. West Virginia*, 10 Otto 303, 100 U.S. 303, 25 L.Ed. 664 (1880). In applying the principle of *Strauder* to the exercise of peremptory challenges, the Supreme Court in *Swain v. Alabama*, 380 U.S. 202, 222, 85 S.Ct. 824, 837, 13 L.Ed.2d 759 (1965), relied upon a presumption that the prosecutor properly exercised the state's challenges, and refused to permit an inquiry concerning the prosecutor's motives in a single case. The Court placed the burden on the defendant to make out a prima facie case of discrimination by presenting evidence other than the fact that members of the defendant's race were struck in a particular case. *Id.* at 223–24, 85 S.Ct. at 837–38.

It was not until 30 April 1986, when the Supreme Court decided *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), that the Court rejected the "evidentiary formulation" of *Swain,* and held that a defendant may establish a prima facie case of discrimination from the totality of the relevant circumstances existing in the defendant's case, without being required to demonstrate a pattern of discrimination extending beyond that case. 476 U.S. at 93–96, 106 S.Ct. at 1721–23. The Court recognized that "peremptory challenges constitute a jury selection practice that permits 'those to discriminate who are of a mind to discriminate.'" 476 U.S. at 96, 106 S.Ct. at 1723, quoting in part from *Avery v. Georgia*, 345 U.S. 559, 562, 73 S.Ct. 891, 892, 97 L.Ed. 1244 (1953). The Court offered illustrative examples of relevant circumstances that might give rise to an inference of discrimination, including a pattern of strikes against black jurors in the particular venire, and questions and statements of the prosecutor made during the voir dire and jury selection process. *Id.* 476 U.S. at 96–97, 106 S.Ct. at 1722–23. The Court further held that once the defendant had made a prima facie showing of racial discrimination in the exercise of peremptory challenges, the burden shifted to the prosecutor to come forward with a neutral explanation for those challenges. *Id.* at 97, 106 S.Ct. at 1723.

In *Griffith v. Kentucky, supra,* the Supreme Court held that the "new rule for the conduct of criminal prosecutions" announced by *Batson* would apply retroactively to all cases pending on direct review or not then final. 479 U.S. at 328, 107 S.Ct. at 716. This defendant's appeal had not been finally determined when *Batson* was decided, and the rule of *Batson* is therefore applicable.

■ The State concedes that the prosecutor's use of peremptory challenges to exclude the only two blacks in this venire establishes a prima facie case of discrimination. *See Tolbert v. State,* 315 Md. 13, 17–18, 553 A.2d 228 (1989); *Stanley v. State,* 313 Md. 50, 85–87, 542 A.2d 1267 (1988).

The single question that remains is whether we should remand this case to the trial court to afford the prosecution an opportunity to offer race-neutral reasons for its exercise of peremptory challenges against the black venirepersons or, as the defendant strenuously requests, direct that the defendant be given a new trial.

In *Batson,* the Supreme Court remanded the case to permit the trial court to determine whether a prima facie case of discrimination had been established, and if so, to permit the prosecutor an opportunity to come forward with a neutral explanation for his action. 476 U.S. at 100, 106 S.Ct. at 1725. We followed the same course in *Stanley v. State, supra,* after reviewing state and federal cases dealing with the issue, and we have approved limited remands ordered by the Court of Special Appeals for the same purpose. *See Gray v. State,* 317 Md. 250, 254, 562 A.2d 1278 (1989); *Chew v. State,* 317 Md. 233, 236, 562 A.2d 1270 (1989). *See also* Note, *Defense Presence and Participation: A Procedural Minimum for Batson v. Kentucky Hearings,* 99 Yale L.J. 187 (1989) (discussing appropriate procedures for original and remand *Batson* hearings). We noted in *Stanley,* however, that there may be cases in which a remand would not be the appropriate remedy:

This is not to say though that we will always remand for an evidentiary hearing. There may come a time when

we would simply reverse and remand for a new trial. For an example of a case that was reversed and a new trial ordered, *see People v. Scott*, 70 N.Y.2d 420, 426, 522 N.Y.S.2d 94, 98, 516 N.E.2d 1208, 1212 (1987) ("A hearing is inappropriate in this case, however, because of the absence of a record and the impossibility of securing one.").

*Stanley v. State, supra*, 313 Md. at 76 n. 15, 542 A.2d 1267.

■ The defendant argues that a limited remand would be inappropriate in his case for two principal reasons: first, because the prosecutor refused to articulate any reasons for the exercise of peremptory challenges against black venirepersons when he had an opportunity to do so, and he should not now be given a second chance; and second, more than six years have elapsed since jury selection.

The defendant characterizes the prosecutor's initial refusal to give reasons for the peremptory challenges as "impudent arrogance" and would sanction the State by withholding the ordinary procedure of a remand for further proceedings. We do not agree. We may share the defendant's sentiment that if race-neutral reasons had been advanced by the prosecutor at the time the defendant expressed his concern, a substantial amount of subsequent litigation could have been avoided. We must realize, however, that at the time the prosecuting attorney made his response, *Batson* had not been decided. It is true that by that time some state and federal courts had begun to question the continued viability of *Swain's* virtual insulation of the prosecutor's motives. *See Lawrence v. State*, 295 Md. 557, 567–71, 457 A.2d 1127 (1983). *See also Evans v. State*, 304 Md. 487, 525–28, 499 A.2d 1261 (1985) (decided after jury selection had occurred in this case, but discussing cases from other jurisdictions decided prior thereto, and suggesting that a prima facie case might be made out by the manner of exercise of peremptory challenges in a single case).

Although the seeds of change may have been sown, the law remained fixed by *Swain*. We commented upon this

state of the law in *Chew,* when discussing a trial judge's ruling made at about the same time the prosecutor was responding in this case:

> The trial judge held, consistent with the then existing law of *Swain v. Alabama,* . . . that in the absence of some showing of an office policy or consistent pattern of conduct embracing more than a single case, the prosecutor was not required to give any reasons for the exercise of his peremptory challenges.

*Chew v. State, supra,* 317 Md. at 238, 562 A.2d 1270. Accordingly, the response of the prosecutor, though leaning more toward grandiloquence than humility, was a correct statement of the law as he then knew it to be. The tone of his response hardly justifies depriving the State of an opportunity to produce reasons that the State contends existed for the exercise of the challenges.

 ■ The defendant's second argument on this point is that so much time has passed since jury selection in this case that it would be impossible to reconstruct events with sufficient clarity to permit a fair determination of the issue. A similar argument was made, and rejected, in *Batson,* 476 U.S. at 132–33, 106 S.Ct. at 1741–42 (Burger, C.J., dissenting). *See also Chew v. State, supra,* 317 Md. at 239, 562 A.2d 1270; *Stanley v. State, supra,* 313 Md. at 76, 542 A.2d 1267.

In the case before us, the prosecutor and defense counsel are available to provide evidence and argument, and a complete transcript of the voir dire and jury selection process exists. The State informed us at oral argument that the prosecutor has retained his original jury list and notes, and is prepared to offer reasons for the challenges that the State believes are race-neutral. Under these circumstances, we conclude that "a reasonable possibility exists that reconstruction can be fairly accomplished," *Chew v. State, supra,* 317 Md. at 239, 562 A.2d 1270, and that the attempt is worth the effort. If it develops on remand that defense counsel no longer have their notes, and for this or other reasons attributable to delay the defendant has been placed

at an unfair disadvantage in responding to the reasons advanced by the prosecutor, the trial judge may determine that a new trial is required. We repeat what we said in *Chew:*

> Should it appear to a trial judge presiding at a limited remand hearing that the passage of time precludes fair consideration of the relevant issues, that judge will simply order a new trial.

*Id.*

### Conclusion

The defendant did have standing to challenge the prosecutor's exercise of peremptory challenges against black venirepersons. The State's exercise of peremptory challenges against the only two blacks in the venire makes out a prima facie case of racial discrimination, and the burden is upon the State to satisfy the trial judge that the reasons for the challenges were race-neutral. The case must be remanded for further proceedings on that issue.

JUDGMENT OF THE COURT OF SPECIAL APPEALS VACATED; CASE REMANDED WITHOUT AFFIRMANCE OR REVERSAL TO THE COURT OF SPECIAL APPEALS WITH DIRECTIONS TO REMAND THE CASE TO THE CIRCUIT COURT FOR HARFORD COUNTY WITH DIRECTIONS TO THAT COURT TO CONDUCT A HEARING IN ACCORDANCE WITH THIS OPINION. COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO ABIDE THE RESULT.

ROBERT M. BELL, J., dissents with an opinion in which ELDRIDGE, J. joins.

ROBERT M. BELL, Judge dissenting.

I respectfully dissent from the limited remand ordered in this case to permit the prosecutor to supply race-neutral reasons for the exercise, more than six years earlier, of peremptory challenges to exclude African–American venirepersons from jury service. When initially accused of using

his peremptory challenges systematically to exclude African–American venirepersons, the prosecutor stood firmly on his absolute discretion to strike whomever he chose, without interference from either the trial judge or defense counsel. Later, when the issue was raised at the hearing on respondent's new trial motion, he submitted on the record.

The majority rejects respondent's request for a new trial, perceiving it to be based on the prosecutor's refusal "to articulate any reasons for the exercise of peremptory challenges against black venirepersons when he had an opportunity to do so, and he should not now be given a second chance," when more than six years have elapsed since jury selection. The prosecutor not only did not explain his peremptory strikes, he gave no indication that he *had* an articulable basis (as opposed to a "hunch" or unparticularized "notion") for their exercise. It is that circumstance—the failure of the record of the proceedings at which the objection was raised to reflect the reasons, or an articulable basis, for the prosecutor's use of the peremptory challenges—that renders a limited remand inappropriate.

When respondent challenged the State's peremptory striking of African–American venirepersons, the prosecutor refused to explain, noting that "neither defense nor the court for that matter can indicate to me, similar to a nol pros situation, who I can strike or who I can't. It is absolutely discretionary on my part and that is the status of the case law as I know it to be at this time." Significantly, he did not deny the respondent's allegation even though, consistent with his position, he could have done so; denial of the discriminatory use of peremptories is not the same as explaining why certain venirepersons were challenged.[1]

---

1. It is interesting that a major reason for the limited remand in the case is the State's proffer, made at oral argument, "that the prosecutor has retained his original jury list and notes and is prepared to offer reasons for the challenges that the State believes are race-neutral." This indicates that it need not be the "reason" that triggers further inquiry, but an indication that there may be a "reason." In other words, the majority finds a limited remand appropriate because the

· The prosecutor had another opportunity to indicate that he had an· articulable basis for the strikes he made. That the State had discriminatorily excluded African–Americans from the jury was a basis for respondent's motion for new trial. Nevertheless, during the hearing on that motion, the prosecutor again refused to answer the challenge, preferring "to submit on the record."

The record of the proceedings reflects nothing that even suggests that the prosecutor had any articulable basis for striking the only African–Americans on the venire. The fact that he had an absolute discretion to strike anyone for any reason, or for no reason, *i.e.*, on a hunch or instinct, without interference from defense or court, tells us nothing about why he used the strikes; it could have been for race-neutral reasons, for other articulable bases, or just on a hunch. The prosecutor's response to the respondent's complaint certainly does not indicate that he had any articulable basis for the peremptory strikes. In any event, it does not corroborate what we are now told, that he did have an articulable basis.

In *Stanley v. State*, 313 Md. 50, 76, 542 A.2d 1267, 1280 (1988), we ordered a limited remand after determining both that the defendant had made out a *prima facie* case of discriminatory exercise of peremptory challenges and the prosecutor "has never had an opportunity to respond to [that] *prima facie* showing." In that case, however, the only argument offered against limited remand was "the lapse of some two years since the original jury selection," a rationale we rejected. *Id.* Concerning the issue *sub judice*, the prosecutor's comments during jury selection permitted an inference that, at the very least, the prosecutor denied

record now reflects that further inquiry may be fruitful. I would not order a limited remand because the record of the jury selection proceeding reflects the opposite.

exercising the challenges discriminatorily: [2]

[ASSISTANT STATE'S ATTORNEY]: If we look at the jury that has in fact been selected you will find that three out of the 12 jurors actually on the jury are black. That would approximately be 75 percent. So that would be a direct correlation to what the panel was, what the State and the Defense had to choose from originally.

If his objection is on an individual basis that each one when I struck the individual he wanted to object because he thought I was striking an individual because of their race, it is my understanding that the defense has the burden at that point to ask to approach the bench. I think the case is Batson versus Kentucky.

At that time if you felt I did something improper you would be able to inquire of me what my exact reason was, even though it was a peremptory challenge.

If his argument is as a whole the way it was done then I would just submit on what I have already argued.

313 Md. at 66–67, 542 A.2d at 1275. Thus, unlike the case *sub judice*, the record of the proceedings supported the limited remand—it made arguable the proposition that the prosecutor had an articulable basis, which may have been race-neutral, for the strikes.[3] *Gray v. State*, 317 Md. 250,

---

**2.** Denial of discriminatory exercise of peremptories permits the inference that the prosecutor has, at least, rationalized the exercise of the strikes and, thus, had an articulable basis for their exercise.

**3.** When the jury was selected in the case *sub judice, Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986) had not been decided, but, as the majority notes, *Swain v. Alabama,* 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965), was being questioned. I believe the prosecutor should have been aware of *Swain*'s shaky foundation. *See Lawrence v. State,* 295 Md. 557, 567–71, 457 A.2d 1127 (1983); *Evans v. State,* 304 Md. 487, 525–28, 499 A.2d 1261 (1985). *See also Chew v. State,* 317 Md. 233, 237–39, 562 A.2d 1270, 1272–1273 (1989). Although *Evans* was decided after jury selection in this case, it referred to cases, decided before, which, foreshadowing *Batson,* discussed procedures for making out a *prima facie* case of discriminatory exercise of peremptory challenges. The prosecutor in this case should not be rewarded for failing to keep abreast of trends in the law. Moreover, by his deliberate refusal to at least deny that he

253, 562 A.2d 1278, 1279–80 (1989) and *Chew v. State*, 317 Md. 233, 239, 562 A.2d 1270, 1272–73 (1989) are to like effect.

In *Gray*, despite being told that he need not give any reasons for how he exercised his peremptory challenges, the prosecutor volunteered

> that he had not systematically excluded black jurors; that he could recall having struck one black juror who had informed the court that he was personally acquainted with defendant's attorney; that he could not then recall who the other black jurors were; and, that "it's very difficult to articulate the reasons one selects and does not select a jury. Some times it is just their demeanor, their appearance, their body language—it may be their age, their occupation.

317 Md. at 253, 562 A.2d at 1279–1280. In *Chew*, two days after their use of peremptory strikes had been challenged, the prosecutors dictated into the record the reasons they struck four African–American venirepersons. 317 Md. at 239, 562 A.2d at 1272–1273 (1989).

In each of the cases from other jurisdictions cited by petitioner the record of the proceedings provides a basis for the remand.[4] *See Wright v. State*, 186 Ga.App. 104, 366 S.E.2d 420, 421 (1988) (prosecutor not given an opportunity to explain use of peremptories); *People v. Garrett*, 139 Ill.2d 189, 151 Ill.Dec. 329, 333, 564 N.E.2d 784, 788 (1990) (prosecutor gave a partial explanation for the use of peremptories and started to explain further but was cut off by the trial judge); *People v. Hope*, 137 Ill.2d 430, 148 Ill.Dec. 252, 257–270, 560 N.E.2d 849, 855–886 (1990) (prosecution explained use of peremptories); *Dedeaux v. State*, 519

---

intentionally exercised the challenges discriminatorily, he took the risk that he would later be required to answer respondent's allegations.

**4.** In all of the cases cited, save one, *People v. Garrett*, 139 Ill.2d 189, 151 Ill.Dec. 329, 333, 564 N.E.2d 784, 788 (1990), the jury selection process occurred prior to *Batson*.

So.2d 886, 887–88 (Miss.1988) (prosecution refused to explain the use of peremptories, except to state that they were not racially motivated); *People v. Jenkins,* 75 N.Y.2d 550, 555 N.Y.S.2d 10, 15, 554 N.E.2d 47, 52 (1990) (prosecution's offer to explain use of peremptories rejected by the trial court); *People v. Thompson,* 79 A.D.2d 87, 435 N.Y.S.2d 739, 743 (1981) (prosecution volunteered that it did not intend systematically to exclude blacks).[5]

Uncovering pretexts in the exercise of peremptory challenges is difficult at best, even when the issue is raised, and the explanation given, during the jury selection process itself. It becomes proportionately more difficult with the passage of time. Six years and several cases defining race-neutral reasons later, *see Chew,* 317 Md. at 245, 562 A.2d at 1275–1276; *Tolbert v. State,* 315 Md. 13, 18–24, 553 A.2d 228, 1230–1232 (1989); *Adams v. State,* 86 Md.App. 377, 382, 586 A.2d 810, 812 (1991); *Stanley v. State,* 85 Md.App. 92, 100–06, 582 A.2d 532, 535–539 (1990), *cert. denied,* 322 Md. 240, 587 A.2d 247 (1991), the potential for abuse is, to say the least, great. Also, whatever the trial court's determination concerning the issue, appellate review of the decision is inevitable; thus, we ought be selective in ordering limited remands. Certainly we must not order them automatically.

In resolving this issue, the critical consideration is fairness, which at bottom is reflected in, and adds to, the integrity of the system. When the State is not afforded an opportunity, at the trial level, to respond to defense charges, it would be unfair not to allow it to do so after an appellate proceeding has found those charges sufficient,

---

**5.** *People v. Scott,* 70 N.Y.2d 420, 522 N.Y.S.2d 94, 516 N.E.2d 1208 (1987) is similar to the case *sub judice* insofar as the prosecution did not dispute the facts alleged, offer additional facts, nor explain the strikes. It is different, however, because the Court did not remand for further proceedings due to the combination of the absence of a record and the impossibility of securing one, the lapse of time, the unavailability of the presiding judge, and the fact that the memories of the participants had undoubtedly faded in four years.

*prima facie,* to require a response.   On the other hand, given the potential for abuse, the integrity of the process may be compromised when the State is given *another* opportunity to respond, notwithstanding its refusal to respond on the first occasion.   That is especially the case when it is that initial refusal that caused the trial record deficiency on that critical point in the first place.   In my opinion, therefore, there is a need for a bright line minimum requirement, which, if it does not exist, will preclude a limited remand.   I would require, as a minimum, that the record of the proceedings reflect either that the State *was not given the opportunity to respond* to the defendant's allegations or some indication that the State had an articulable basis for the strikes it made.

In this case, although given the opportunity to respond to the challenge, the prosecutor neither disputed the allegations nor provided any clue that he had a basis for his actions.   The prosecutor's belated offer to provide reasons for the strikes he made more than six years ago, which reasons, we are told, the State believes to be race-neutral, comes much too late.

The majority makes much of the fact that the defense counsel and prosecutor are available and that a complete transcript of the *voir dire* and jury selection process exists. While, in a vacuum, this may be helpful, what really is at stake is the extent to which reconstruction can be accomplished fairly.   We have no proffer from defense counsel as to the availability of his records or his ability to recall information which would be significant in challenging explanations given by the prosecutor.   That is at least as important a consideration as the prosecutor's belated proffer.

There being no corroboration in the record of the proceedings that articulable reasons for the use of peremptories existed at the time they were exercised, coupled with the passage of more than six years before any proffer was made, I would order a new trial.

Judge ELDRIDGE has authorized me to state that he joins in the views expressed herein.