623 A.2d 648

Jerry Samuel TYLER

v.

STATE of Maryland.

Gerald Wynn EILAND

v.

STATE of Maryland.

No. 87, Sept. Term, 1992.

Court of Appeals of Maryland.

April 26, 1993.

Argued by Richard A. Finci (Victor A. Houlon, Houlon & Berman of Hyattsville) and argued by Steven F. Reich (Charles F.C. Ruff, Covington & Burling of Washington, DC; Leonard R. Stamm, Goldstein & Stamm, P.A. of Greenbelt all on brief) for petitioners.

Amicus Curiae by Stephen A. Fennell, David H. Coburn, Roderick L. Thomas, Tracy Zorpette, Steptoe & Johnson, Marcia Greenberger, Myung Lee, all of Washington, DC, for National Women's Law Center, Women's Legal Defense Fund, Now Legal Defense and Education Fund, Women's Law Center, Inc. (Maryland), Women's Rights Project of the American Civil Liberties Union Foundation and American Civil Liberties Union of Maryland.

Mary Ellen Barbera, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., both on brief), Baltimore, for respondent.

Argued before ELDRIDGE, RODOWSKY, McAULIFFE, CHASANOW, KARWACKI, and ROBERT M. BELL, JJ., and CHARLES E. ORTH, Jr., Judge of the Court of Appeals of Maryland (retired), Specially Assigned.

ORTH, Judge.

We are presented on this appeal with the question:

Does Maryland or federal law prohibit the State from exercising peremptory challenges at trial in a manner systematically designed to exclude women from service on the jury?

Under the Maryland law, the answer is "yes."

I

The Supreme Court of the United States in *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), declared that "the State's privilege to strike individual jurors through peremptory challenges, is subject to the commands of the Equal Protection Clause." 476 U.S. at 89, 106 S.Ct. at 1719 (footnote omitted). The Court explained:

Although a prosecutor ordinarily is entitled to exercise permitted peremptory challenges "for any reason at all, as long as that reason is related to his view concerning the outcome" of the case to be tried, ... the Equal Protection Clause forbids the prosecutor to challenge potential jurors solely on account of their race or on the assumption that black jurors as a group will be unable impartially to consider the State's case against a black defendant.

*Id.* (citation omitted). *Batson* thus deemed race to be a suspect class and purposeful racial discrimination in the selection of a jury is subject to strict scrutiny. *Batson* announced an outline of a three-step process for evaluating claims that a prosecutor has used peremptory challenges in a manner violating the Equal Protection Clause. 476 U.S. at 96–98, 106 S.Ct. at 1722–24. *Hernandez v. New York,* 500 U.S. ——, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991), explained the process:

First, the defendant must make a prima facie showing that the prosecutor has exercised peremptory challenges on the basis of race.... Second, if the requisite showing

has been made, the burden shifts to the prosecutor to articulate a race-neutral explanation for striking the jurors in question.... Finally, the trial court must determine whether the defendant has carried his burden of proving purposeful discrimination.

500 U.S. at ——, 111 S.Ct. at 1866 (citations to *Batson* omitted).

But the Court has not yet had occasion to decide whether the *Batson* principles apply to peremptory challenges based on gender discrimination.

## II

## A

■ Article 24 of the Maryland Declaration of Rights declares:

That no man ought to be taken or imprisoned or disseized of his freehold, liberties or privileges, or outlawed, or exiled, or, in any manner, destroyed, or deprived of his life, liberty or property, but by the judgment of his peers, or by the Law of the land.

Amendment XIV, Section 1 to the United States Constitution, declares, in relevant part,

nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

We observed in *Attorney General v. Waldron*, 289 Md. 683, 426 A.2d 929 (1981):

Although the Maryland Constitution contains no express equal protection clause, we deem it settled that this concept of equal treatment is embodied in the due process requirement of Article 24 of the Declaration of Rights.... It is, perhaps, because this State has no express equal protection clause that Article 24 has been interpreted to apply "in like manner and to the same extent as the Fourteenth Amendment of the Federal Constitution," ... so that "decisions of the Supreme Court on the Fourteenth Amendment are practically direct authorities." ... While it is true ... that the equal

protection guaranties of Article 24 and the fourteenth amendment are independent, capable of divergent effect, it is apparent that the two are so intertwined that they, in essence, form a double helix, each complementing the other.

*Id.* at 704–705, 426 A.2d 929. We said that

the decisions of the United States Supreme Court are not only controlling as to our interpretation and application of the equal protection clause of the fourteenth amendment but also persuasive as we undertake to interpret Article 24....

So we are brought within the *Batson* framework not only by the Fourteenth Amendment to the Constitution of the United States, but by the equal protection guarantees of Art. 24 of our Declaration of Rights.

### B

Article 46 of the Maryland Declaration of Rights, known as the Equal Rights Amendment or E.R.A., declares concisely and succinctly:

Equality of rights under the law shall not be abridged or denied because of sex.

It "mandated equality of rights under the law and rendered state-sanctioned sex-based classifications suspect." *State v. Burning Tree Club, Inc.*, 315 Md. 254, 269, 554 A.2d 366, *cert. denied*, 493 U.S. 816, 110 S.Ct. 66, 107 L.Ed.2d 33 (1989). We said:

Plainly, under prior holdings of this Court, state action providing for segregation based upon sex, absent substantial justification, violates the E.R.A., just as segregation based upon race violates the Fourteenth Amendment.

*Id.* at 295, 554 A.2d 366, citing to *Burning Tree Club v. Bainum*, 305 Md. 53, 95–98, 501 A.2d 817 (1985). We declared:

Any statute which discriminates on the basis of sex requires justification. The E.R.A. "absolutely forbids the determination of such 'rights,' as may be accorded by law, solely on the basis of one's sex." *Burning Tree*

*Club v. Bainum, supra,* 305 Md. at 70, 501 A.2d at 825 (Murphy, C.J.).

315 Md. at 295, 554 A.2d 366. In *Briscoe v. P.G. Health Dep't,* 323 Md. 439, 452 n. 7, 593 A.2d 1109 (1991), we stated:

> In Maryland, of course, because of Article 46 of the Maryland Declaration of Rights, gender-based classifications are suspect and are subject to strict scrutiny.

We iterated this statement in *Murphy v. Edmonds,* 325 Md. 342, 357 n. 7, 601 A.2d 102 (1992), in these words:

> In Maryland, because of the Equal Rights Amendment to the Maryland Constitution (Article 46 of the Maryland Declaration of Rights), classifications based on gender are suspect and subject to strict scrutiny.

In both cases, we cited to *Burning Tree,* 315 Md. at 295–296, 554 A.2d 366.

### C

We summarize. Art. 46 of the Maryland Declaration of Rights established equality of rights under the law without regard to gender. The Equal Rights Amendment is pulled into the orbit of *Batson* by the equal protection guarantees of Art. 24 of our Declaration of Rights. *Batson* held that equal protection guarantees forbid the State in a criminal prosecution to use peremptory challenges to exclude potential jurors solely on account of their race or on the assumption that because of their race they will be unable to be impartial. The Supreme Court deemed race to be a suspect classification subject to strict scrutiny. We have held that because of Art. 46 sex, like race, is a suspect classification subject to strict scrutiny. Therefore, under Maryland constitutional law, the State may not use peremptory challenges to exclude potential jurors because of their gender.

### III

### A

The question on this appeal arose after a jury was impaneled in the Circuit Court for Prince George's County at the

trial of Gerald Wynn Eiland and Jerry Samuel Tyler. Eiland and Tyler were jointly charged with the murder of James Stanley Bias, III, and offenses related thereto. The State expressed its satisfaction with the jury "as presently constituted." Defense counsel, however, at the bench, stated that they were not satisfied. They challenged the composition of the jury. They made clear that their challenge arose under both the equal protection clause of the federal constitution and Articles 24 and 46 of the Declaration of Rights of Maryland. They objected to the prosecution's use of peremptory strikes "both as to race and as to gender." The judge responded that he would "go through *Batson* in compliance with the Supreme Court directives." But he limited the challenge to racial discrimination. He flatly declared: "I'm not going to even discuss gender, but you may argue all you wish on race." Defense counsel asked, "May I at least make a record on gender," and the judge replied, "You may proffer that you wanted to do this, and that I declined to permit it. Let's go on to race." Later the judge observed:

> I'll let you make your record, whatever you want to put on the record, as to your reasons as to why you think that gender should be a basis, but I'm not going to, irrespective of your reasons, but, you know, who knows if they extended *Batson* just the other day.

The rationale of the judge was that there was no case which bound the Maryland courts on the question of gender bias in juror selection. He opined that *Batson* did not cover it and this Court expressly reserved the issue in *Tolbert v. State,* 315 Md. 13, 23 n. 7, 553 A.2d 228 (1989).

Although the trial judge did not permit defense counsel to argue the matter of gender discrimination in the use of the State's peremptory challenges, the prosecutor's motive in his challenge to potential women jurors became pellucid in his attempts to explain the use of his peremptory challenges to strike African–Americans. He used most of his 20 peremptory challenges to strike women from the jury, and the State does not dispute that he relied on gender in

striking the women. In the State's brief before the Court of Special Appeals in Tyler's case, it conceded that "[t]here is no doubt that the prosecutor did strike women jurors on the basis of their gender...." The prosecutor himself acknowledged his purpose:

As a general theory of the State's case, the State wanted more men on this case, and wanted older as opposed to younger....

Later he said:

[I]t's going to be a repeat pattern for almost the remainder of my strikes, is that I was trying to get older people in the jury and more men....

The bottom line is that it was apparent that the prosecutor did not want women on the jury simply because of their sex. Obviously, he thought that women would "be unable impartially to consider the State's case ...," an idea repugnant to *Batson's* dictates. *Batson*, 476 U.S. at 89, 106 S.Ct. at 1719.

After hearing argument from counsel on the objection to the State's use of its peremptory challenges with respect to race, the judge ruled. True to the position he had taken, he did not consider the propriety of the peremptories on the claim that they were gender motivated. He said:

I think [the prosecutor] has given cogent reasons for his use of the strikes, and I find that he has not unconstitutionally or impermissibly used his peremptory [challenges] based on race; and I think he has very good reasons, tactical and strategic, for doing what he did, and that those reasons were not based on race.

The trial court denied the challenges to the jury based on race.

### B

Eiland and Tyler appealed from the judgments entered on the convictions. The Court of Special Appeals affirmed the judgments. *Eiland v. State*, 92 Md.App. 56, 607 A.2d 42 (1992). Although Eiland and Tyler filed, briefed and argued

separate appeals, the Court of Special Appeals elected to consolidate the two appeals for the purposes of its opinion "[b]ecause they were both convicted at a joint trial, because the evidence admitted as to each was also admitted as to the other, and because of the broad (albeit not total) overlap of the issues raised by [them]. . . ." 92 Md.App. at 63, 607 A.2d 42.

The Court of Special Appeals admitted:

If we were persuaded that the glare of equal protection should properly focus upon the use of peremptory challenges in the context of a single case, we would not hesitate to declare that gender bias is just as invidious as racial bias.

92 Md.App. at 91, 607 A.2d 42. And it did not dispute that if gender were within the ambit of *Batson*, the prosecutor's use of his peremptories constituted a denial of the equal protection guarantees and would be contrary to *Batson's* holdings. *See Eiland*, 92 Md.App. at 94–96, 607 A.2d 42.

In disposing of Eiland's and Tyler's claim based on federal law, however, the intermediate appellate court, even though it found the Maryland view of peremptory challenges to be "unique and parochial," 92 Md.App. at 92, 607 A.2d 42, refused to interpret *Batson*, which prohibited the exercise of peremptory challenges on the basis of race, to prohibit their exercise on the basis of gender. *Id.* at 91, 607 A.2d 42. It believed that it is not wise to prophesy what the Supreme Court will do or anticipate how it will rule when an unresolved question comes before it. *Eiland*, 92 Md.App. at 90, 607 A.2d 42.

In disposing of the claim of Eiland and Tyler based on the law of this State, the Court of Special Appeals looked to the Equal Rights Amendment, Article 46 of the Maryland Declaration of Rights, but the court was not persuaded to adopt the *Batson* principles as a part of Maryland law. *Id.* It explained its holding against Eiland and Tyler on this matter:

[I]t is not so much a case of finding that [the] facts [here] do not constitute a violation of Maryland law. It is rather

the case that we find no *Maryland* law that these facts could violate.

92 Md.App. at 94, 607 A.2d 42 (emphasis in original). As we have demonstrated in Part II of this opinion, the law which the intermediate appellate court did not find lies in Art. 46 and Art. 24 of our Declaration of Rights.

We certified the case to us upon grant of a petition by Eiland and a petition by Tyler. Before us, Eiland and Tyler filed individual briefs and individual reply briefs, each of which presented the question with respect to the conduct of the State in using peremptory challenges to exclude women from the jury. The State answered in one brief.

## IV

We hold that:

1) The equality of rights under law, without regard to gender, bestowed by Art. 46 of the Maryland Declaration of Rights, flowing through the equal protection guarantees of Art. 24 of the Maryland Declaration of Rights to *Batson v. Kentucky,* 467 [476] U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), prohibits the State in a criminal prosecution from using peremptory challenges so as to exclude a person from service as a juror because of that person's sex.

2) The trial court here erred in not addressing the defendants' objection to the composition of the jury based on gender bias.

3) The Court of Special Appeals erred in affirming the judgments of the Circuit Court for Prince George's County.

In *Batson* the Court remanded the case for further proceedings to give the prosecutor an opportunity to explain his peremptory challenges because the trial judge flatly rejected the challenges based on racial discrimination without going through the *Batson* three-stage process. 476 U.S. at 100, 106 S.Ct. at 1725. In the case at hand, the trial judge flatly rejected defense counsel's objections to the

prosecutor's peremptory challenges based on gender discrimination without requiring the prosecutor to explain his conduct. In *State v. Gorman*, 324 Md. 124, 596 A.2d 629 (1991), a majority of this Court agreed to remand the case to give the prosecutor an opportunity to supply race-neutral reasons for the exercise of his peremptory challenges to exclude African–American venire persons from jury service. But in the case at hand the prosecutor's remarks in explaining his use of peremptory challenges with respect to race made perfectly clear that his use of peremptory challenges to exclude women from the jury were gender motivated and, therefore, contrary to Maryland constitutional law. From his own mouth, it is patent that his attempts to exclude women were simply that he believed that he had a better chance to obtain guilty verdicts from a jury composed of men (preferably older men) than one composed of women (particularly young women). In the face of what the prosecutor said at trial, he is not entitled to come forward at this time in an attempt to present a neutral explanation for challenging women jurors. Tyler and Eiland are entitled to a new trial without further ado.

Tyler and Eiland also claimed that the trial judge erred in denying their motions to be tried separately. In view of our decision, there is no need for us to address the propriety of the denial of the motions to sever.

JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED.

CASES REMANDED TO THAT COURT WITH DIRECTION TO REMAND TO THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY WITH DIRECTION TO VACATE ITS JUDGMENTS AND GRANT TYLER AND EILAND A NEW TRIAL.

COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID BY PRINCE GEORGE'S COUNTY.

Dissenting opinion by McAULIFFE, J., in which RODOWSKY and KARWACKI, JJ., join.

McAULIFFE, Judge, dissenting.

For the reasons well stated by Judge Moylan for the Court of Special Appeals in *Eiland v. State*, 92 Md.App. 56, 86–94, 607 A.2d 42, 57–61 (1992), I would not apply the principles of *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), to invalidate the prosecutor's exercise of peremptory challenges in this case.

RODOWSKY and KARWACKI, JJ., join in this opinion.