Watts, J.
Respectfully, I concur in part and dissent in part. In the Court of Special Appeals, this case gave rise to multiple opinions explaining the Court’s holdings. In this Court, this case gives rise to five opinions, none of which has the full support of a majority of judges of the Court.
*583 I agree with Judge Greene that, in this case, the circuit court erred in reseating the prospective jurors whom Spencer’s counsel peremptorily struck, and as to whom the State raised a Batson challenge;[1] and, like Judge Greene, based on the Batson issue, I would reverse the judgment of the Court of Special Appeals with instructions to reverse the circuit court’s judgment and remand this case to the circuit court with instructions to conduct a new trial. Rather than concluding that a remand is not appropriate where a trial judge made a clearly erroneous finding at step three of the Batson analysis, I would hold only that a remand to develop new evidence of purposeful discrimination is not permissible and is not in the interest of justice. I would, however, affirm the Court of Special Appeals as to the sufficiency of the evidence, and hold that the evidence was sufficient to support the conviction for attempted second-degree intent-to-kill murder.
I. Proper Remedy for the Circuit Court’s Batson Violation
I wholly agree with Judge Greene that the circuit court erred in resolving the Batson issue; there was no support in the record for a finding that Spencer’s counsel had peremptorily struck prospective jurors based on race in earlier cases; and the appropriate remedy is a new trial. See Judge Greene’s Op. at 539, 547-48, 562-64, 149 A.3d at 614-15, 619-20, 628-29.
In this case, justice would not be served by ordering a remand because a post-trial hearing for the purpose of developing new evidence concerning the trial judge’s recollections of Spencer’s counsel’s past conduct would give the State a “second bite at the apple”—ie., a second chance to establish a case of purposeful discrimination, or a prima facie case with respect to Spencer’s counsel’s past conduct or practice—when the proper time to establish the same was before trial, not after.
*584 Judge Greene asserts, and my other colleagues who write agree, that the dispute concerns step three of the Batson analysis[2]—i.e., whether the circuit court was correct in determining that the State had proven purposeful racial discrimination, or whether State had established that Spencer’s counsel’s alleged racially neutral reasons for exercising its peremptory strikes were, in fact, pretextual. See Judge Greene’s Op. at 552-53, 149 A.3d at 622-23. Yet, evidence regarding the circuit court’s recollection of Spencer’s counsel’s past conduct or practice, which constituted evidence of purposeful discrimination, is evidence that would go to step one of the Batson analysis. Obviously, Spencer’s counsel’s past conduct or practice does not go to step two, which concerns Spencer’s counsel’s race-neutral reasons for the peremptory strikes, not Spencer’s counsel’s past pattern of exercising peremptory strikes. Nor does Spencer’s counsel’s past conduct or practice go to step three, which is comprised of a trial court’s assessment of the evidence before it, not the development of additional evidence.
Contrary to my colleagues’ beliefs, Spencer never conceded that the circuit court made a proper determination at step one of the Batson analysis, much less agreed before this Court that the circuit court’s determination at step three was the sole issue in dispute. Quite the opposite, in his brief, Spencer urges this Court to “reject the trial [courtj’s Batson finding as clearly erroneous where there was no record evidence to support that finding of intentional discrimination, and where [Spencer’s] counsel vigorously disputed the trial [court]’s characterization.” Spencer’s contention clearly goes to step one, *585 which involves a determination of a prima facie case of purposeful discrimination. As Judge Greene accurately recounts, the State on brief alleges that “[t]his case addresses the third step, which is reviewed only for clear error[ ].” Judge Greene’s Op. at 553, 149 A.3d at 622 (brackets in original). Spencer contends no such thing.
None of my colleagues identifies any explicit concession by Spencer that evidence of Spencer’s counsel’s past conduct goes solely to the circuit court’s determination at step three of the Batson analysis; instead, they rely on their interpretation of the record, despite Spencer’s contention that “there was no record evidence to support [the circuit court’s] finding of intentional discrimination[.]” It should be noted that, in the alternative, Spencer contended that, “even assuming [that] the trial [court] based [its] step three Batson finding on something other than [Spencer’s] counsel’s presumed past practice of discrimination, reversal is still warranted where the finding of pretext was clearly erroneous.” This contention obviously does not constitute a concession that the dispute in this case is limited to step three of the analysis. Put plainly, the record is devoid of any such concession by Spencer.
In an opinion in which she dissents in part, Chief Judge Mary Ellen Barbera quotes the following statement by the majority of the panel of the Court of Special Appeals as to the Batson issue: “The [circuit] court made an express finding that there was a ‘pattern of striking white mostly male jurors, even jurors who have not answered a question.’ The [circuit] court then moved to the second Batson step, asking defense counsel to offer his rationale for the use of his peremptory strikes.” Op. at 574, 149 A.3d at 635 (emphasis added). A review of the record, however, reveals that the circuit court required Spencer’s counsel to respond to the State’s Batson challenge without making an explicit determination at step one and without determining that it was Spencer’s counsel’s in-court conduct that necessitated the response.
The prosecutor raised a Batson challenge, alleging that Spencer’s counsel had struck at least four white prospective *586 jurors who had not responded to any questions during voir dire. In full context, the circuit court stated: “[Spencer’s counsel], you’ve been playing with this for a long time in your other trials. The Court has noticed a pattern of striking white mostly male jurors, even jurors who have not answered a question. I’m going to require you to explain your rationale or striking.” In other words, the circuit court did not expressly find that the State had established a prima facie case of purposeful discrimination based on Spencer’s counsel’s in-court conduct of peremptorily striking white prospective jurors; but, rather, without announcing that step one of the Batson analysis had been satisfied and without delineating between Spencer’s counsel’s in-court conduct or its recollection of trial counsel’s prior pattern of peremptorily striking white prospective jurors, the circuit court proceeded to step two of the Batson analysis and required trial counsel to provide race neutral reasons for the peremptory challenges.
Regardless of whether the dispute involves evidence of purposeful discrimination at step one of the analysis or the circuit court’s analysis at step three, the point which should be emphasized is that no Supreme Court or Maryland case law permits a remand to gather additional evidence post-trial of a Batson challenge at any stage of the analysis. Miller-El v. Dretke, 545 U.S. 231, 125 S.Ct. 2317, 162 L.Ed.2d 196 (2005), does not support the proposition that a post-trial hearing to establish a violation at any step of the Batson analysis is appropriate. In Miller-El, id. at 235, 263-64, 125 S.Ct. 2317, 2340, the Supreme Court held that a trial court erred in determining that a defendant failed to show purposeful racial discrimination, where there was a “body of evidence” that showed that, for decades leading up to the defendant’s trial in 1986, the prosecutor’s office “had followed a specific policy of systematically excluding blacks from juries[.]” Significantly, this evidence was presented at a “Swain hearing.” A Swain hearing was a pretrial hearing whose purpose was to determine whether the defendant was entitled to relief under Swain v. Alabama, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965), which, before Batson, was the case that governed relief for *587 peremptory strikes that were based on purposeful racial discrimination. See Miller-El, 545 U.S. at 236, 125 S.Ct. 2317. Earlier, during jury selection, prosecutors had exercised peremptory strikes on ten African-American prospective jurors. See id. The defendant claimed that the peremptory strikes were based on race, and requested a new jury on that ground. See id. The trial court conducted a Swain hearing and concluded that the prosecutor’s office did not have a policy of systematically excluding blacks from juries. Id. at 264, 236, 125 S.Ct. 2317, 2340.
The jury convicted the defendant, who appealed. See id. at 236, 125 S.Ct. 2317, 2340. While the appeal was pending, the Supreme Court issued Batson, in which the Court overruled Swain. See Miller-El, 545 U.S. at 236, 125 S.Ct. 2317. A Texas appellate court remanded the defendant’s case to the trial court for further consideration in light of Batson. See Miller-El, 545 U.S. at 236, 125 S.Ct. 2317. On remand, the trial court accepted the race-neutral reasons that one of the prosecutors provided for the peremptory strikes. See id. The defendant appealed again, and a Texas appellate court affirmed the trial court’s judgment. See id. at 236-37, 125 S.Ct. 2317, 2340.
Years later, the defendant applied for a writ of habeas corpus, once again asserting that the peremptory strikes had been based on race. See id. at 237, 125 S.Ct. 2317, 2340. A federal District Court denied the application, and the Supreme Court concluded that it erred in doing so. See id. Based on the record established during voir dire and adduced at the Swain hearing, the Supreme Court found several instances of evidence of purposeful racial discrimination; for example, the prosecutors phrased certain voir dire questions differently depending on whether the prospective juror was black. See Miller-El, 545 U.S. at 255, 125 S.Ct. 2317.
In Batson, 476 U.S. at 100, 106 S.Ct. 1712, because the trial court rejected the defendant’s objection to the prosecutor’s removal of all African-American prospective jurors without requiring the prosecutor to explain his action, the case was remanded for further proceedings. In other words, in Batson, *588 the Supreme Court remanded the case for the sole purpose of allowing the prosecutor to explain his action in challenging African-American jurors, not for the purpose of holding a hearing to develop new or additional facts in support of a prima facie case of purposeful discrimination.
With respect to a remand as the remedy for a Batson violation, as Judge Greene notes, see Judge Greene’s Op. at 564, 149 A.3d at 629, in Edmonds v. State, 372 Md. 314, 339-40, 812 A.2d 1034, 1048-49 (2002), this Court stated:
[Ujnless it is impossible to reconstruct the circumstances surrounding the peremptory challenges, due perhaps to the passage of time or the unavailability of the trial judge, the proper remedy where the trial court does not satisfy Batson’s requirements is a new Batson hearing in which the trial court must satisfy the three-step process mandated by that case and its progeny.
(Emphasis added). In Edmonds, this Court ordered a remand pursuant to Maryland Rule 8-604, which states in pertinent part: “If the Court concludes that the substantial merits of a case will not be determined by affirming, reversing or modifying the judgment, or that justice will be served by permitting further proceedings, the Court may remand the case to a lower court.” Md. R. 8—604(d)(1) (emphasis added). In Edmonds, 372 Md. at 341, 812 A.2d at 105, a remand was appropriate because the trial court failed to make a finding as to the credibility of a prosecutor’s race-neutral reasons for peremptory strikes; accordingly, this Court remanded to a trial court with instructions to “make a determination whether the prosecutor’s race-neutral reasons were pretextual[.]” Our holding in Edmonds demonstrates that there may be instances in which a remand for the trial court to satisfy step three is warranted. In contrast to Edmonds, here, there is no “gap” in the record with respect to the circuit court’s findings as to trial counsel’s reasons for striking the jurors; rather, the circuit court made a finding about Spencer’s counsel’s “practice” of striking jurors that was unsupported by any information in the record.
*589 Similarly, in Stanley v. State, 313 Md. 50, 76, 542 A.2d 1267, 1279-80 (1988), a limited remand occurred for the State to explain the exercise of its peremptory challenges against African-American prospective jurors. On remand, a hearing was held at which the prosecutor, relying on notes from the jury selection process, explained his reasons for striking African-American jurors. See Stanley v. State, 85 Md.App. 92, 97, 582 A.2d 532, 534 (1990), cert. denied, 322 Md. 240, 587 A.2d 247 (1991). On remand, the trial court found the prosecutor’s reasons for challenging the jurors to be race-neutral. See Stanley, 85 Md.App. at 94, 582 A.2d at 533. Subsequently, the Court of Special Appeals held that the prosecutor’s use of peremptory challenges was motivated by race-neutral reasons, and affirmed the convictions. See id. at 106, 582 A.2d at 538-39. Like Batson and Edmonds, Stanley does not stand for the proposition that a remand is to be used to develop new facts or a new record to support the establishment of the purposeful discriminatory use of peremptory challenges. In sum, in Stanley, 313 Md. at 75-76, 542 A.2d at 1279, this Court concluded that the trial court properly found a prima facie case of purposeful discrimination, and ordered a remand to allow the State an opportunity to explain its use of peremptory challenges. On remand, the prosecutor relied on notes taken during the original jury selection process to support or explain the reasons for utilizing peremptory challenges. See Stanley, 85 Md.App. at 97, 582 A.2d at 534. Indeed, in Stanley, 313 Md. at 76 n.15, 542 A.2d at 1280 n.15, this Court stated:
This is not to say though that we will always remand for an evidentiary hearing. There may come a time when we would simply reverse and remand for a new trial. For an example of a case that was reversed and a new trial ordered, see People v. Scott, 70 N.Y.2d 420, 522 N.Y.S.2d 94, 516 N.E.2d 1208, 1212 (N.Y.1987) (“A hearing is inappropriate in this case, however, because of the absence of a record and the impossibility of securing one.”).
*590 (Emphasis added).[3] Thus, in Stanley, on remand, the State was given an opportunity to respond to the prima facie showing, and was restricted to reconstructing the circumstances of the original jury selection process. A review of relevant case law reveals that a limited remand has never been used to allow the proponent of a Batson challenge a second opportunity to develop new evidence of purposeful discrimination. Put plainly, although a remand under certain circumstances may be appropriate to allow a trial court to satisfy the Batson analysis and in the interest of justice, no case law authorizes a remand for the purpose of developing new evidence of purposeful discrimination at any step of the Batson analysis. For this basic reason, the appropriate remedy here is a new trial.
On a related matter, in Rivera v. Illinois, 556 U.S. 148, 157, 129 S.Ct. 1446, 173 L.Ed.2d 320 (2009), the Supreme Court held that, under the United States Constitution, Batson issues are subject to the doctrine of harmless error—ie., an appellate court may affirm a trial court’s erroneous ruling on a Batson issue if the error was harmless beyond a reasonable doubt. In other words, under the United States Constitution, a Batson error is not a “structural error,” which can never be harmless. As the Supreme Court expressly observed, its holding concerned only the United States Constitution, and States are free to conclude that, as a matter of State law, a Batson error can never be harmless. See id. at 162, 129 S.Ct. 1446.
Chief Judge Barbera brings up Rivera for the purpose of opining that, at some point, this Court should resolve the issue that the Supreme Court left open in Rivera—ie., whether a Batson error can be harmless under the Maryland Constitution. As Chief Judge Barbera expressly notes, however, this *591 case cannot be a vehicle for deciding that issue, as “neither party has even touched this issue, much less presented to this Court a properly preserved argument on the issue.” Chief Judge Barbera’s Op. at 582, 149 A.3d at 640. The existence of the Supreme Court’s holding in Rivera in no way undermines the conclusion that the correct outcome in this case is a new trial.
As a general rule, a trial judge should evaluate Batson challenges based on counsel’s in-court conduct, and not rely on his or her recollection of counsel’s performance in prior cases. Going forward, however, in some instances, the necessity for a pretrial determination concerning a trial judge’s recollection of counsel’s past practice of discrimination in employing peremptory challenges may arise; as such, I would provide the following guidance. The question of what a trial judge should do when he or she believes that counsel has a practice of exercising peremptory strikes in a discriminatory manner raises thorny issues. To the extent that a trial judge has recollections about counsel’s behavior in past cases and deems the recollections relevant, the question becomes whether a disclosure should be made and what procedure the trial judge should follow in making the disclosure. Where a trial judge believes that counsel has, in prior cases, struck prospective jurors based on discriminatory grounds, as a threshold matter, the trial judge must decide whether to inform the parties of his or her belief, outside of the hearing of the prospective jurors. The trial judge must use his or her best judgment and evaluate all of the relevant circumstances in determining whether to put the parties on notice of its belief—and, if so, what to communicate to the parties about its belief. From my perspective, during the jury selection process, a trial judge should not disclose information concerning counsel’s prior use of peremptory strikes unless the trial judge is convinced that a demonstrable pattern of the discriminatory use of peremptory strikes exists, that there is a record of prior Batson challenges attendant to counsel’s conduct, that Batson challenges have been sustained against counsel, and that the incidents are relatively recent in time.
*592 Upon being informed of the trial judge’s recollection regarding a past pattern of discrimination, if counsel for the other party wishes to pursue the matter, the trial judge may pause jury selection and, if necessary, conduct a brief hearing, at which the other party would have the opportunity to present evidence or argument, and the challenged party would have the opportunity to rebut the claim of a pattern of peremptory strikes based on race. The trial judge must refrain from acting both as a judge and as a witness by treating its opinion of counsel’s past conduct as evidence or as conclusive of the issue. The trial judge must also consider whether, in light of its recollection of counsel’s past conduct or practice of discriminatory use of peremptory strikes, disclosure of the circumstance or recusal is appropriate under Maryland Rule 18-102.11(a), also known as Rule 2.11(a) of the Maryland Code of Judicial Conduct, which states in pertinent part: “A judge shall disqualify himself or herself in any proceeding in which the judge’s impartiality might reasonably be questioned[.]”
II. Sufficiency of the Evidence
Because the issue of the sufficiency of the evidence to support the conviction for attempted second-degree intent-to-kill murder is dependent upon the facts and circumstances of this case, the relevant trial testimony is briefly described below.
At trial, as a witness for the State, Detective Priscilla Rogers (“Detective Rogers”) testified as follows. Detective Rogers observed a Kia Soul (“the Kia”) run a stop sign. Detective Rogers attempted to initiate a traffic stop by using her vehicle’s lights and siren, but the Kia kept going, thus starting a car chase. Multiple other law enforcement vehicles joined the pursuit. Eventually, while the Elia was in front of Detective Rogers’s vehicle, Detective Rogers saw Andrew Kinn (“Kinn”) on a bicycle on the side of the road. Detective Rogers estimated that her vehicle was two telephone poles away from Kinn when she first saw him. Kinn was wearing a bright yellow shirt, and multiple flags were flying from the back of his bicycle. Kinn saw the Kia, got off of his bicycle, *593 and started moving toward a ditch beside the road. Despite having the opportunity to avoid Kinn, the Kia drove off of the road and onto the grass, where the Kia struck Kinn while going approximately sixty miles an hour. Kinn hit the Kia’s windshield, then flew approximately fifteen feet and landed in the ditch. During her investigation of the car chase, Detective Rogers spoke with Keevin Robinson, one of the Kia’s passengers, who told Detective Rogers that he and the other passengers saw Kinn and told the driver to look out.
As a witness for the State, Deputy Christopher Tolley (“Deputy Tolley”) testified as follows. At one point during the car chase, Deputy Tolley was in front of the Kia, and saw Kinn as he tried to get off the road. The Kia moved to one side to get out from behind Deputy Tolley’s vehicle. Despite the fact that it would have been “very easy” for the Kia to avoid hitting Kinn by either turning onto the road or going into the ditch, the Kia continued going straight and struck Kinn.
As a witness for the State, Deputy Wendell Garrison (“Deputy Garrison”) testified as follows. Deputy Garrison could see Kinn from three telephone poles away. Per protocol, the law enforcement officers had left the Kia an avenue of escape, as opposed to surrounding the Kia on all sides. Despite being able to go into the opposite lane—in which there was no oncoming traffic—the Kia struck Kinn.
The circuit court instructed the jury on second-degree intent-to-kill murder in pertinent part as follows:
Second degree murder does not require premeditation or deliberation. In order to convict the Defendant of attempted murder in the second degree the State must prove: one, that the Defendant took a substantial step beyond mere preparation toward the commission of murder in the second degree; two, that the Defendant had the apparent ability at the time to commit the crime of murder in the second degree; and three, the Defendant attempted to actually kill [ ] Kinn.
The circuit court read Maryland Criminal Pattern Jury Instruction 3:31 nearly verbatim, stating in pertinent part: *594 “[Y]ou may, but are not required to infer that a person ordinarily intends the natural and probable consequences of his acts or omissions.” This statement is legally accurate. See Jones v. State, 440 Md. 450, 456, 103 A.3d 586, 589-90 (2014) (“[I]t is permissible to infer that a defendant intends the natural and probable consequences of the defendant’s act.” (Brackets, citation, and internal quotation marks omitted)).
“Evidence is sufficient to support a conviction where, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.” Id. at 454-55, 103 A.3d at 589 (emphasis in original) (brackets, citation, and internal quotation marks omitted). At the risk of stating the obvious, the natural and probable consequence of hitting somebody with a car that is going sixty miles an hour is that the person will suffer fatal injuries. Here, Deputy Tolley testified that it would have been “very easy” for Spencer to avoid hitting Kinn. Deputy Garrison testified that the law enforcement officers left Spencer an avenue of escape. Robinson told Detective Rogers that the passengers in Spencer’s vehicle saw Kinn and told Spencer to look out. Kinn was wearing a bright yellow shirt, and multiple flags were flying from the back of his bicycle. These facts provide ample evidence that Spencer saw and intended to kill Kinn.
If, during Spencer’s attempt to flee law enforcement, he saw and intended for his car to strike Kinn, an inference can be made that he had the specific intent to kill Kinn. In finding insufficient evidence to support the conviction, Judge Greene relies, in part, on the circumstance that Spencer was fleeing law enforcement officers to support a finding that Spencer lacked the specific intent to kill Kinn. See Judge Greene’s Op. at 570-71, 149 A.3d at 633. Spencer’s desire or intent to flee is not mutually exclusive with his possession of the requisite intent to support a conviction for attempted second-degree murder. Based on the testimony adduced at trial, taking the evidence in the light most favorable to the State, the evidence was more than sufficient to support the conclusion that Spenc *595 er saw and struck Kinn with the specific intent to cause fatal injuries.
For the above reasons, respectfully, I concur in part and dissent in part.

. See Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).

. It is well-established that, where a party raises a Batson challenge, a trial court must follow a three-step process. First, the trial court determines whether the party that raised the Batson challenge has made a prima facie showing that the other party struck a prospective juror based on race. See Ray-Simmons v. State, 446 Md. 429, 436, 132 A.3d 275, 279 (2016). Second, if the trial court finds a prima facie case of purposeful discrimination, the trial court orders the challenged party to offer race-neutral reasons for the peremptory strikes. See id. at 436, 132 A.3d at 279. Third, the trial court determines whether the party that raised the Batson challenge has proven purposeful racial discrimination, i.e., whether the reasons given by the non-moving party are pretextual are not. See Ray-Simmons, 446 Md. at 437, 132 A.3d at 280.

. In Mejia v. State, 328 Md. 522, 540, 616 A.2d 356, 364-65 (1992), a limited remand was authorized to give the prosecutor an opportunity to explain the reasons for striking a Hispanic prospective juror. This Court stated: "[S]hould it appear that there is no reasonable possibility that the circumstances surrounding the striking of [the Hispanic prospective juror] can be reconstructed fairly, then a new trial may be required and the trial judge may order one.” Id. at 541, 616 A.2d at 365.